Butler University *v.* Scoonover *et al.*

Filed April 18, 1888.

No. 13,040.

## BUTLER UNIVERSITY *v.* SCOONOVER ÉT AL.

CORPORATION.—*Stockholder.*—*Subscription for Stock.*—*Issue of Certificates.*—To create the relation of stockholder it is not essential that a certificate should have been issued, provided a contract to take stock has been made, or provided the rights and emoluments of a stockholder have been enjoyed with the consent of the corporation ; but there must in every case be some sort of subscription whereby the subscriber obtains the right, upon some condition, to demand stock and to exercise the rights of a stockholder.

SAME.—*Contract.*—*Nudum Pactum.*—Where one neither subscribes for nor receives or controls stock, and neither acts as a stockholder nor is recognized as such by the corporation, a bond executed by him, reciting that he has retained as a loan a certain sum of his subscription to the stock of the corporation, and that he agrees to pay interest thereon, failing in which the principal shall become due, is without consideration, and not enforceable.

SAME.—*Recital in Separate Instrument Concerning Subscription for Stock.*—In such case the recital in the bond that the obligor " has retained of his subscription for two shares of capital stock * * the sum of two hundred dollars, being the amount of his subscription, as a loan," is neither a subscription in itself nor conclusive evidence of a subscription.

SAME.—*Effect of Subscription for Stock.*—Whether one who subscribes for stock in a corporation becomes, by the mere fact of making the subscription, a stockholder therein, depends upon the terms of his contract and the charter of the corporation, and whether the subscription was made

as preliminary to the organization, or after it was under way, for stock thereafter to be issued.

From the Tippecanoe Superior Court.

*H. W. Chase, F. S. Chase, F. W. Chase, H. Speed* and *O. B. Jameson,* for appellant.

*F. B. Everett,* for appellees.

MITCHELL, C. J.—On the 5th day of September, 1866, Scoonover, as principal, and Morehouse, as surety, delivered a written contract, duly signed by them, to the Northwestern Christian University.    It was recited therein that Scoonover had retained two hundred dollars of his subscription to the stock of the university, as a loan made to him by the corporation of so much of its endowment fund, agreeably to the provisions of its charter, which authorized it to give preference to the subscribers to its stock, as borrowers. The obligors jointly and severally agreed to pay interest on the amount of the loan at the rate of six per cent. per annum in advance, and, in the event of their failure to pay the interest according to the agreement, or in case they should thereafter fail to give such further security as the board of directors of the university should at any time require, the principal sum was to become due and payable.

The complaint alleged that Scoonover, on the day upon which the contract sued on bears date, subscribed for two shares of one hundred dollars each of the capital stock of the university, and that he retained the whole amount of his subscription as a loan from the university, and executed the obligation sued on as evidence thereof, with Morehouse as surety.

It was alleged that the name of the university had since been changed, and that default had been made by Scoonover, in that he had failed and refused to pay any interest since November 1st, 1879.

Upon an issue that the contract had been executed without any consideration whatever, the cause was tried by a jury,

who returned, in a special verdict, substantially the following facts: They found that the bond had been duly executed, but that Scoonover "at no time before or after the execution of said bond subscribed for any stock in the Northwestern Christian University." They found further that no stock had ever been issued to Scoonover; that he never acted as a stockholder, nor received, owned or controlled any stock, and that he never received anything as a consideration for the execution of the bond sued on.

The court, over the appellant's motion for judgment in its favor, gave judgment for the defendants below on the special verdict so returned. The propriety of this ruling involves all there is in the case.

The appellant contends that the bond or contract sued on was, in effect, a subscription to the stock of the university, and that hence the finding of the jury that Scoonover never had subscribed for nor received a certificate for any stock, and that he never acted as a stockholder nor owned or controlled any stock, and that he never received any consideration for the bond, is immaterial. This position is not sustainable. Of course, the fact that no certificate of stock was issued is of itself of no consequence. It is not essential that a certificate should have issued in order to create the relation of stockholder, provided a contract to take stock had been duly made, or provided the rights, privileges and emoluments of a stockholder had been enjoyed, with the consent of the corporation.

The theory upon which the complaint proceeded was, that Scoonover had subscribed for two shares of one hundred dollars each of the capital stock of the university, and that, instead of paying his subscription in money, he had simply retained the amount as a loan, in consideration of which he executed the bond sued on, with Morehouse as surety. If this theory had been sustained, whether a certificate had been·issued or not, Scoonover, upon payment, at least, if not

before, would have had some rights in the corporation which it would have been bound to recognize.

The jury found, and the evidence sustains the finding, or tends to sustain it, that Scoonover never subscribed for any stock. Never having subscribed for any stock, there was, of course, no consideration for the bond, unless in some way he received stock or acted or was recognized as a stockholder. The jury expressly negative each and all of these propositions. They return that the defendant never subscribed for, nor received, owned or in any manner controlled, any stock, and that he received no consideration whatever for the bond. *Fanning* v. *Insurance Co.*, 37 Ohio St. 339, was a suit by an insurance corporation upon a note for $3,000, and to foreclose a mortgage given as a security therefor. It appeared that the defendant had verbally agreed to take $3,000 in stock, and had given the note and mortgage in suit in payment therefor. In the absence of proof that the maker of the note had subscribed for stock, so as to be entitled to the rights and privileges of a stockholder, or that she had received stock, or that she had in some other way estopped herself, it was held that her contract was a *nudum pactum*. The doctrine of the case is unquestionably sound, and well supported by authority. It is decisive of the present case.

It does not appear, in the case before us, that there was even an oral agreement to subscribe for stock. The recitals in the bond, and the whole case, assume that Scoonover had subscribed for stock, and that the subscription price was the consideration of his contract to pay. When, therefore, it appeared that he never had subscribed for stock, nor in any other manner acquired any right to be recognized as a stockholder, in the event of payment of the bond, it became entirely clear that his contract was without consideration. Although it may be true that a binding contract of subscription to the stock of a corporation, unless the statute or articles of association provide to the contrary, may be made, without actually signing a formal subscription paper or stock-

book, in any manner that the subscriber and corporation clearly manifest their purpose to enter into a contract whereby the relation of stockholder of the corporate stock is to result—yet there must in every case be some sort of subscription or contract whereby the subscriber obtains the right, upon some condition, to demand stock and to exercise the rights of a stockholder.

Contracts for membership in a corporation are not different in their essential elements from other contracts. There must be contracting parties whose minds mutually assent to some proposition, and whose agreement creates corresponding obligations between the parties. 1 Morawetz Corp., sections 44, 62. As a matter of course, if one manifests his intention to become a stockholder in a corporation by some overt act, and with the consent of the corporate body assumes the duties and accepts the privileges of a shareholder, he may be estopped thereafter from denying his liability as such. *Hawley* v. *Upton*, 102 U. S. 314 ; *Sanger* v. *Upton*, 91 U. S. 56 ; *Nugent* v. *Supervisors*, 19 Wall. 241 ; Cook Stock and Stockholders, section 52.

The special verdict in the present case, however, goes to the full extent of showing that the minds of the parties never mutually assented to any contract of subscription, or to an agreement to take or deliver corporate stock, for it finds that Scoonover never subscribed for any stock, that he never in any manner acted as a stockholder, and that he received no consideration whatever for the bond sued on.

How can it be said that such a finding would support a judgment upon a complaint which distinctly charges that the consideration of the bond sued on was the subscription price of two shares of stock?

It is said, however, that the recital in the bond that Scoonover was a stockholder estopped the appellees from denying that fact. However that might be, in the event the bond contained such a recital, it is enough to say, the only

basis for the proposition is the recital that Scoonover " has. retained of his subscription for two shares of capital stock * * * the sum of two hundred dollars, being the amount of his subscription, as a loan." While this recital might well have been regarded, in the absence of countervailing evidence, as sufficient proof that a subscription of some kind had been made, it was not, without more, conclusive, either upon the corporation or Scoonover, that the latter was a stockholder. The recital was in no sense contractual, but was a mere statement of the consideration of the bond, and was in no sense different in effect than would be a recital in a promissory note or other contract for the payment of money, concerning the consideration upon which it was executed. Whether one who subscribes for stock in a corporation becomes by the mere fact of making the subscription a stockholder therein, depends upon the terms of his contract and the charter of the corporation, and whether the subscription was made as preliminary to the organization, or after it was under way, for stock thereafter to be issued. 1 Morawetz Corp., sections 46, 61; *Clark* v. *Continental, etc., Co.*, 57 Ind. 135; *Lake Ontario Shore R. R. Co.* v. *Curtiss*, 80 N. Y. 219.

The jury do not find that any calls were paid on subscription to the stock. What they find is, that interest was paid on the bond in suit.

As before observed, the turning point in the special finding is that it distinctly negatives the issuable fact tendered by the complaint, that there had been a subscription to the stock of the university. All that appeared in evidence tending to show a subscription was the recital contained in the bond sued on, and while this was some, and might well have been regarded as sufficient, proof of a subscription of some kind, it was neither a subscription in itself, nor was it conclusive evidence that a subscription had been made.

What the rights of the corporation would have been in case it had tendered the stock alleged to have been subscribed for, before the bringing of the suit, and whether, in that event,

a plea of no consideration for the bond would have been available, and supported by the evidence, we need not now decide.

It is inferable that the bond sued on was not executed until years after the corporation was organized, and the fact must not be ignored that subscriptions to stock, before or in the process of organizing a corporation, and agreements to take stock in an existing corporation, stand on an entirely different footing.

Judgment affirmed, with costs.

Filed Jan. 20, 1888; petition for a rehearing overruled April 18, 1888.