## M. T. KELLEY ET AL. v. W. W. COLLIER.

### No. 620.

**1. Practice on Appeal.**

Where the trial court erroneously overrules an exception which goes to the sufficiency of plaintiff's petition, it does not follow that all errors committed in the trial of the case against the rights of the plaintiff are pretermitted, since plaintiff might have amended, should the court have sustained the exceptions.

**2. Corporation—Contract with Officers of, Construed—Individual or Corporate Liability.**

A contract for the erection by plaintiff of water-works for a corporation, made with its directors as individuals, and providing that plaintiff will take shares of the stock in part payment, is not a valid subscription of stock, and plaintiff's remedy for violation of the contract should be against the directors as individuals; but if it was made with such directors as representatives of the corporation, plaintiff, upon compliance with its terms, would be entitled to the stipulated shares of stock, and could maintain an action against the corporation therefor.

**3. Same—Parol Evidence Admissible.**

Where it is not apparent from the terms of the contract made by plaintiffs with certain directors of a corporation, whether it is made with them as individuals or as representatives of the corporation, and whether or not plaintiffs were contracting in the capacity of stockholders, parol evidence is admissible to show the true intent and nature of the contract.

**4. Same—Charge of Court.**

In such case of uncertainty as to the character of the contract, it was error for the court to charge, in the absence of a prior finding by the jury that the contract was made with the corporation, that a contract by which a corporation binds itself to issue stock to a person renders him a stockholder.

**5. Same—Mismanagement of Corporation no Defense.**

Where certain directors of a corporation personally contracted with plaintiffs to pay for services to the corporation in shares of stock, and plaintiffs' petition in an action against him for the value of the stock avers that they constitute a majority of the board of directors and own all the stock but one share, and have rendered the stock worthless by a mortgage and sale thereunder of all the corporate property, an answer alleging that the execution of the mortgage was an act of the corporation, presents no defense.

**6. Same—Action for Mismanagement Against Directors.**

Where certain directors of a corporation own nearly all the stock and have complete management of the corporate business, an action for mismanagement may be brought by a stockholder against them in their own names.

**7. Same—Answer Contradicting Written Agreement.**

While plaintiffs' written contract with defendants, who were directors of the corporation, provided for the payment to plaintiffs of a stated sum of money and the transfer to them of a certain amount of stock, an answer alleging that it was understood by all parties that defendants were unable to contribute to the building of the water-works provided for in the contract, and were not required to put up any money, should be stricken out on demurrer, as contradicting the terms of the contract, whether it was made with defendants personally or as representatives of the corporation.

**8. Same—Pleading and Proof—Recovery.**

Where a recovery is sought against officers of a corporation solely on the ground of personal liability on a contract of services to the corporation, an instruction to the jury to find for defendant if they found that the contract was made in behalf of the corporation, was correct.

**9. Same—Estoppel.**

Where a mortgage on the corporate property, with the sale thereunder, renders the corporate stock worthless, and is executed with the knowledge and consent of parties holding a contract for services to the corporation to be paid for partly in stock, and a portion of the money borrowed under such mortgage is received by them, they are estopped thereby to sue the directors for the face value of the stock covered by the contract.

ERROR from Uvalde. Tried below before Hon. EUGENE ARCHER.

*Brown, Lane & Jackson,* for plaintiffs in error.—The suit being upon a written contract, it was not competent to alter, vary, change or enlarge its terms and provisions by parol testimony, and the pleading setting up a defense intended to be sustained by such parol evidence was not good. A demurrer to same should have been sustained. If, however, the written contract upon which appellants brought suit had been upon its face ambiguous, as for instance, if it had been so worded as that it might have appeared from its reading that either Collier and Townes, or the Uvalde Water Supply and Power Co. might be bound by it, then and in such cases, it would have been competent for defendant Collier to allege and prove by parol evidence that it was the intention and understanding of the parties that the corporation, and not Collier and Townes, should be bound by it; that they, Collier and Townes, had power to contract for the corporation and intended to contract for it and not themselves, and that such was the intention and understanding of the plaintiffs and defendants in making the contract. Wooters v. Ry. Co., 54 Texas, 299; Belcher v. Mulhall, 57 Texas, 17; Self v. King, 28 Texas, 553; Traynham v. Jackson, 15 Texas, 170; Eckhart v. Reidel, 16 Texas, 62; Dyer v. Sullivan, 18 Texas, 767; Daughtrey v. Knolle, 44 Texas, 450.

*Clark & Fuller,* for defendant in error.—1. The court erred in overruling the general demurrer of defendant in error, for the reason that the petition of plaintiffs in error shows no cause of action against him. Keely v. Webb, 27 Texas, 368; 1 W. & W. Con. Cases, secs. 265, 1225; 3 Am. and Eng. Enc. Law, 910, and notes.

2. Where part only of a contract is reduced to writing and the other part rests in parol, and is not in conflict with the writing, upon proper

allegations to this effect, that portion not reduced to writing may be shown by oral testimony. Thomas v. Hammond, 47 Texas, 43; 2 White & W. C. C., sec. 544; Greenleaf on Evidence, sec. 284; 2 Wharton on Evidence, sec. 1027; Roberts v. Bonapart, Book 10, Lawyers' Rep., 689; Hinneman v. Rosenback, 39 N. Y. App., 98; Bonney v. Merrill, 57 Me., 368.

3. Where an officer of a corporation signs a contract in the business of the corporation for work to be done for the benefit of the corporation, he may allege and show that all parties thereto understood that he was not to be bound individually, but was signing for the corporation. Butler v. Merchant, 27 S. W. Rep., 193; Texas Land & Cattle Co. v. Corrall & Iler, 63 Texas, 48; Trayham v. Jackson, 15 Texas, 170; 4 W. & W. C. C., sec. 201; Briggs v. Portridge, 64 N. Y. App., 397.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by M. P. Kelley and B. D. Copeland, plaintiffs in error, on May 12, 1893, against W. W. Collier, defendant in error, and N. D. Townes, who, having died, the cause was as to him discontinued.

The plaintiffs alleged in their petition that the defendants, Collier and Townes and J. D. Crenshaw, on the 6th day of October, 1890, formed themselves into a corporation; that to accomplish such incorporation, they prepared, signed and acknowledged a charter in the manner and form as required by the laws of Texas and filed it with the Secretary of State of Texas on the 27th day of October, 1890; that, as declared in said charter, the name of said incorporation was "Uvalde Water Supply and Power Company"; its purposes were to supply the city of Uvalde, and the inhabitants thereof, with water for all purposes, etc.; its directors for the first year were J. D. Crenshaw, N. D. Townes and W. W. Collier, and its capital stock was $25000, divided into 250 shares of $100 each; that defendants were the active promoters and organizers of the corporation; that they were desirous of erecting therefor a system of water works at the town of Uvalde for the purposes set forth in said charter; that they applied to plaintiffs to furnish the materials necessary therefor and to construct said system of water works; that plaintiffs submitted to defendants a proposition in writing, which is in substance as follows:

"Uvalde, Texas, February 28, 1891.
"To Messrs. Collier & Townes:

"Gentlemen—We will build the Uvalde water works according to the plans and specifications now in the city secretary's office, less eight hundred feet of six-inch pipe. And we will furnish steam pump of same size with 50 horse power steel boiler and a stand pipe 12 feet in diameter and one hundred feet high with good and satisfactory foundations and everything complete; and pump house with rock basement to ground level, 16x16 feet, with connections for two pumps; and boiler house, 12x24 feet (box), with metallic roof. Also good well in creek eight feet in diameter, with cut rock walls, and bolted down with

wooden cover, so as to prevent muddy water entering flow pipe. All work to be done in first class workmanlike manner, for the sum of $22500, twenty-two thousand five hundred dollars, and we will take the bonds to be issued by the city of Uvalde to the Uvalde Water Supply and Power Company, at ninety cents on the dollar, or we will let you place the bonds; and we further agree that, in order to enable you to secure money for the completion of said works, we will allow you to hypothecate all of our stock in connection with your stock and retain the same until all claims and expenses for the completion of said works are paid by us, and the works are accepted by the city. And it is further agreed that the ten thousand dollars in city bonds turned over to us and nine thousand dollars in cash additional paid to us (as needed for work and material on said works) shall be all that you shall pay for the completion of said works, we agreeing to pay four thousand five hundred dollars ($4500) of the twenty-two thousand five hundred dollars ($22500) and retaining one-third of the $50000 capital stock, or $16500 of said stock for same. To be completed July 1, 1891.

(Signed)                                    "M. P. Kelley,
(Signed)            .                       "B. R. Copeland."

That defendants accepted said proposition by an endorsement written thereon and signed by them, as follows:

"Accepted. (Signed) N. D. Townes. (Signed) W. W. Collier."

That in said proposition accepted as aforesaid, it was contemplated (and it was so agreed between plaintiffs and defendants) that the charter of said corporation should be amended and its capital stock should be increased to $50000; that accordingly defendants, who then owned the whole of the stock in said corporation except one share, which they had given to the said Crenshaw, and who were officers and directors of said corporation, did, on the 28th day of February, 1891, hold a meeting for the purpose of increasing the capital stock of the said corporation to $50000, to be divided into 500 shares of $100 each; that the defendants constituted a majority of the stockholders, owned a majority of the stock, and at said meeting voted in favor of increasing the capital stock of said corporation to $50000, to be divided as aforesaid; that afterwards, on the 4th day of March, 1891, at a meeting of the board of directors of said corporation, held for that purpose in the town of Uvalde, defendants, who were a majority of the board of directors, by a unanimous vote decided to, and by resolution adopted by them did, increase the capital stock of said corporation to the sum of $50000, to be divided as aforesaid, and did make a certificate to that effect and did cause it to be filed in accordance with law, in the office of the Secretary of State of the State of Texas, for the purpose of amending the charter of said corporation; that said proposition, accepted as aforesaid, further contemplated (and it was so agreed between plaintiffs and defendants) a contract between the city of Uvalde and said corporation for the supplying it with water for fire protection, etc.; that accordingly an agreement was entered into be-

tween said corporation and the city of Uvalde by which the said corporation bound itself to furnish water to the said City of Uvalde for the period of ten years, for fire protection and for other public purposes, and as compensation therefor the said city of Uvalde agreed to issue its bonds to the said corporation to the amount of $10000; that said $10000 bonds were accordingly issued by the said city and delivered to defendants.

That pursuant to the contract thus made between plaintiffs and defendants, plaintiff supplied all the labor and material necessary therefor, and constructed and completed said system of water works in accordance with the terms and provisions of said contract on or about the 20th day of July, 1891; that the same was accepted by defendants and the city of Uvalde as being in accordance with the terms and provisions of the contract; that defendants delivered to plaintiffs said bonds of the city, but failed and refused to pay plaintiffs the $9000 which they bound themselves to pay, or to deliver to them said $16500 of capital stock; that defendants, instead of paying themselves any money in and about the construction of said system of water works out of their own funds, as they had agreed, and it was understood they would do, being a majority of the board of directors of said corporation, caused it to make a promissory note payable to themselves for the sum of $8000, with twelve per cent interest per annum from maturity until same should be paid, and for ten per cent thereon as attorney's fees for costs of collecting said notes; and on the 30th of April, 1891, caused said corporation to convey, for the recited consideration of $10, to J. P. Cranke all real estate owned by said corporation situated in the town of Uvalde, Uvalde County, Texas, also all buildings then in course of construction, and all machinery, piping, property, and fixtures of every description then owned and operated by said corporation, which property conveyed was the system of water works then being constructed by plaintiffs; that said conveyance to Cranke was in trust to secure the defendants in the payment of said note; that thereby defendants created a debt against said corporation in their favor in the sum of $8000, and a lien upon all the property of the corporation, including said system of water works then in course of construction by plaintiffs; that defendants thereupon transferred said note and trust deed to the San Antonio National Bank and received therefor the sum of $8000.

That defendants, by failing to pay said sum of $9000, and by creating said debt and lien against the said system of water works, rendered the stock of said corporation worthless, or practically so, and put it out of their power to deliver to plaintiffs the said $16500 of unincumbered capital stock which they were entitled to under said contract; that defendants issued the whole of said stock to themselves and appropriated it to their own use and benefit.

The petition, excluding the $16500 of stock, states the accounts between the parties and shows a balance against plaintiffs in defendants' favor of $777.02, which amount plaintiffs allege they have at all

times been ready and willing to pay whenever defendants would or could issue and deliver to them the $16500 of unincumbered capital stock of said corporation. But that defendants, by reason of the wrongful and fraudulent course of conduct pursued by them in creating said debt of $8000, placing a mortgage upon said system of water works to secure its payment, and in failing to place the amount of money of their own in the enterprise which they personally and out of their own funds had agreed to put into the same, have put it out of their power to comply with their contract with plaintiffs.

That defendants suffered the whole of said system of water works to be sold out under said trust deed and $8000 debt on or about the 3d day of January, 1893, and to be bought in by some other person or persons, and it is now and has been ever since said 3d day of January, 1893, utterly out of the power of defendants to comply with their said contract, and to deliver to plaintiffs one-third of the unincumbered capital stock of said corporation, of any value whatever, for the reason that they had wrongfully secured or suffered the entire property and assets of said corporation to be sold and passed to another person, or other persons, so that if plaintiffs should now pay said balance of $777.02 against them in favor of defendants, they would be unable to obtain the said stock in a condition to be of any value to them.

That the value of said system of water works, if it had been unincumbered at the time of its completion by plaintiffs, was at least twenty-five thousand dollars; that, by said contract, plaintiffs were entitled to one-third of the stock of said corporation, which was, at the time of the completion of said system of water works, if said corporation's property had not been wrongfully encumbered with said debt, of the value of $8333.33, for which sum plaintiffs prayed judgment, less the sum of $777.02, with interest from the 20th day of July, 1891.

The defendants answered by general and special exceptions, a general denial, and by pleading specially that plaintiffs and defendants agreed among themselves to procure the contract with the city of Uvalde to obtain the city's bonds and to own the stock of the corporation and the bonds, as follows: plaintiffs one-third, Collier one-third, and Townes one-third; that it was always agreed and understood between the parties that Collier and Townes were not financially able to build the water works or to contribute any money whatever therefor; that the defendant Collier entered into the undertaking at the request of plaintiffs; that the writing sued upon by plaintiffs is only part of the contract, and was only reduced to writing to show the respective interests of each party and to give special authority to pledge the water works for the purpose of raising money for their construction; that the mortgage of which plaintiffs complain was made with their consent, and that at the time of said agreement plaintiffs were stockholders in said corporation, and, as is alleged in plaintiffs' petition, said water works plant was sold out under said mortgage and said stock rend-

ered worthless. The plaintiffs excepted to the special plea upon the grounds stated in our opinion.

The defendants' exceptions to the plaintiffs' petition and the plaintiffs' exceptions to defendants' answer were overruled, and the cause was tried before a jury and resulted in a judgment and verdict for the defendants; from which judgment a writ of error is sued out and prosecuted before this court.

As the defendant in error has filed cross-assignments of error which go to the validity of the plaintiffs' cause of action, we will consider them first.

They are: (1.) The court erred in overruling the general demurrer of defendant in error for the reason that the petition of plaintiffs in error showed no cause of action against him; and (2) the court erred in overruling the first special exception of the defendant in error, in that the suit was shown by the petition to be one by plaintiffs who were stockholders in the Uvalde Water Supply and Power Company against the officers thereof for mismanagement, and suit was not brought for the benefit of the corporation.

The defendants premise their propositions under these assignments with the assertion that, if they are well taken, it follows that all alleged errors urged by plaintiffs in error are immaterial, and the case should, as the proper result is reached, be affirmed. This premise is not correct, for it by no means follows that if a court erroneously overrules an exception which goes to the sufficiency of a petition, all errors committed in the trial of the case against the rights of the plaintiff are pretermitted. It is not through errors that correct results are obtained by the law. It plays no comedy of errors for the purpose of establishing right. If a petition is not good against a demurrer, the law contemplates that the exception will be sustained, and then, ordinarily, grants the party the privilege of amending, if he can, his defective pleading. If it were conceded that the exceptions were erroneously overruled, to ignore all errors complained of by plaintiffs in error would be to deprive them of the right they would have had to amend if the court had ruled correctly. By accepting the premises of defendant in error as correct, this right would be denied him and his cause might be judicially determined through means of errors commencing with and continuing throughout the entire trial. Under his assignments of error the defendant in error contends (1) that the petition shows upon its face that the contract sued on was made with Collier and Townes as officers of and acting for and in behalf of the corporation, and not by them personally, and that plaintiffs in error are stockholders; and (2) that if it does not appear from the allegations that it was the contract of the corporation, but of Collier and Townes personally, it does appear from the petition that the mortgage under which the property was sold was made by the corporation, and that defendant in error was not responsible to plaintiff in error for the destruction of the value of the stock caused by the mortgage and sale,

and, if he incurred any liability, it was to the corporation and not to its stockholders.

The contract upon its face purports to be one between the several parties by whom it is executed, and it is so declared on in the petition. As to whether or not it is such a contract, is a question of fact to be determined by the instrument itself read in the light of all the facts and circumstances attending its execution. Upon this question largely depends the solution of the question as to whether or not the plaintiffs in error were stockholders; for there is nothing in the allegations in the petition, save the recitals in the agreement, that tends to show that they were shareholders. It was alleged that Collier and Townes owned all the stock except one share, and if the contract was with them individually, it was with them, and not with the corporation, for stock; and, in that event, plaintiffs in error would not be entitled to the shares until they performed their part of the contract. Nor until then would they be shareholders. If the contract with Collier and Townes was not with them as representatives of the corporation, there was no such valid contract of subscription with the company as would constitute the plaintiffs in error stockholders. They could not, in that event, though they may have performed their part of the agreement, enforce the issuance by the company to them of the shares, for there would be no contract authorizing it. They would have to look solely to the individuals with whom they contracted. The use of the words "our stock" by Kelley and Copeland did not constitute them stockholders in the absence of a contract of some kind of a subscription. 1 Thompson on Corporations, sec. 1144; Butler University v. Scoonover, 114 Ind., 381.

If the contract was made with the company through its officers and agents, Collier and Townes, then it should be regarded as a contract with the corporation by plaintiffs in error, entitling them to a number of shares of its stock, and fixing their status as stockholders, upon the performance of their part of the agreement; and their cause of action, if any they would have, upon the matters alleged, would be against the corporation, and not against the defendant in error personally.

The next question that presents itself is: If it appears from the allegations that it was the personal contract of Collier and Townes, can they, under the facts alleged, be held responsible to plaintiffs in error for the destruction of the value of the stock caused by the mortgage and sale by the company of all its property which gave value to the stock? It seems to us that if, from the contract, the obligation rested upon Collier and Townes personally to pay the plaintiffs as a part of the consideration for the performance of their part of the agreement a certain number of the shares of the company's stock, it is no answer to a petition which seeks to enforce such obligation for them to say, "The acts which caused the destruction of the values were those of the corporation and not ours"; especially when it is alleged that they owned all of the stock of the corporation except one share, were

a majority of the board of directors, caused a note for $8000 to be made to themselves, and then caused the corporation to execute the mortgage to secure it, under which the property was sold. Certainly, it could not have been contemplated when the contract was entered into, that Collier and Townes, who controlled every act of the corporation, and without whose consent it could do nothing, would voluntarily so manage the affairs of the corporation as to destroy absolutely the value of a great part of the corporation stock that the plaintiffs in error were to receive for building the Uvalde Water Works in compliance with their part of the contract. From the allegations in the petition, the corporation was practically Collier and Townes, who owned all of its capital stock without, apparently, having paid one dollar for it, who, if they had paid into the treasury of the corporation even a small per cent of the face value of the stock to be retained by them, would have rendered the mortgage on its property unnecessary. It is apparent that the corporation would have refused to sue them for their breach of duty to it, for they managed and controlled it. This was a sufficient excuse, if it was necessary to sue in the company's name, for not applying to the company to establish the suit against Collier and Townes, as its directors and officers (Thompson on Corp., 301; Cates v. Sparkman, 73 Texas, 621), and authorized the plaintiffs in error to sue them in their own name.

In our opinion the court did not err in overruling the exceptions to plaintiffs' petition.

The first assignment of plaintiffs in error complains of the court's overruling their exceptions to the defendants' special plea. The exceptions urged to the plea are as follows: (1) It is not alleged that such further part of the contract is in writing and was executed simultaneously with the one sued on; (2) its terms, date and manner of execution are not averred with such certainty as is by law required in order to apprise the plaintiffs of its contents; and (3) it seeks to raise an issue of facts as to the reading and meaning of said contract. The principle is elementary that, "When parties have reduced their contract to writing, which expresses the terms and character of it without uncertainty as to the subject and nature of the agreement, it is presumed that the writing is the repository, and contains the whole of the agreement made between them; and hence the rule that no contemporaneous evidence is admissible to contradict or vary the terms of a valid written agreement. The court may read a written document in the light of surrounding circumstances, which can be proved, in order to arrive at the true meaning and intention of the parties as expressed in the words used, but will not hear parol evidence of language or words other than those used by the parties themselves in the writing. No other words are to be added to or subtracted from the written instrument." Belcher v. Mulhall, 57 Texas, 20. The principle that when a written instrument forms a part of a more comprehensive transaction, the terms of which are not attempted to be expressed in writing, such parts of the transaction as were not reduced to writing may be alleged and

shown by parol testimony, is not inconsistent with the one quoted, for such evidence does not contradict nor vary the written contract, but is consistent with it. Belcher v. Mulhall, supra. This rule cannot be invoked when it appears that the allegations and evidence by which the "more comprehensive transaction" is sought to be established are inconsistent with the writing; for the meaning and effect of what the parties have agreed upon in writing would be destroyed, and the writing cease to be evidence of even a part of the transaction. Whatever is consistent with the terms of the written agreement of February 28, 1891, which would show the relation of the parties to each other as well as to the corporation, was, under the principles announced, proper for the parties to allege and prove; but such matters as were inconsistent with it were foreign to the case, and could not be brought in issue. When the relation of Collier and Townes to the corporation is considered in connection with the context of the writing, it is not apparent therefrom that it was their individual contract. Nor does it clearly appear that the plaintiffs in error were not stockholders in the company when the writing was executed. The rule is conceded by counsel for plaintiffs in error to be, "in cases where the intention and understanding of the contracting parties were that a corporation, or a principal, and not the officers, or agent signing, should be bound by the instrument sued upon, and when that intention or understanding is suggested by recitals in the body of the instrument or by the manner of writing thereto the signatures, it is proper to plead such facts, and to prove that the understanding of the parties was that the principal or corporation, and not the signer, should be bound by the instrument." The principle thus stated we take to be well established in this state. Butler v. Merchant, 27 S. W. Rep., 193; Texas Land & Cattle Co. v. Carroll, 63 Texas, 48; Traynham v. Jackson, 15 Texas, 170. The expressions, "We will allow you to hypothecate our stock," "We agreeing to pay four thousand five hundred of the twenty-two thousand five hundred dollars and retaining one-third of the capital stock," might indicate that the plaintiffs in error were stockholders in the company when the writing was executed, or such expressions may have been in reference to the stock they expected to acquire by the performance of the agreements. At any rate, the force and meaning of these expressions as they appear in the writing are not clear. Therefore, we think that it was proper to allege and prove, if such was the fact, that the contract in writing was made by plaintiffs with the corporation through its agents, Collier and Townes, and that it was not the intention of the parties that its signers should be personally bound by it; and also to allege and show the relation that plaintiffs in error bore to the corporation, in order to properly understand the meaning and import of the expressions above quoted from the contract in relation to the stock. The exceptions to the parts of the plea that alleged these matters were properly disposed of by the court, and the evidence tending to support such allegation rightfully admitted. But there are some

allegations in the plea which we think are inconsistent with the writing signed by the parties, and should have been stricken from the answer, and the evidence introduced to establish them excluded. For instance, the allegation "that it was agreed between all of the parties and always understood and agreed by and between them, that they were not financially able to build said water works, and that defendant and said Townes were unable to contribute to the same, and that neither defendant nor Townes were required to put in any money except such as could be raised by the sale of their interest in said bonds [those of the city] and upon the credit of said company." If it was the contract of Collier and Townes as individuals, these allegations are incompatible with their promise to pay plaintiffs the money as provided by the contract. If the contract of the corporation, the allegations are inconsistent with the idea that the money should be paid by the corporation; for Collier and Townes being practically the owners of all the stock (if plaintiffs in error were not shareholders), their failure to pay anything on their shares would render it impossible for the corporation to pay anything to the plaintiffs except by mortgaging its property, thereby impairing if not destroying the value of the very stock that plaintiffs were to receive as their compensation. The effect of this would be to destroy the value of their own property for the purpose of raising money to pay a debt another party owed them, and thus abrogate a part of the written contract.

The fourth assignment of error complains of the following paragraph of the court's charge: "If you believe from the testimony that the plaintiffs were stockholders in the Uvalde Water Supply and Power Company, then you will find a verdict for the defendant, and in order to render a person a stockholder in a corporation, it is not necessary that certificates of stock should actually have been issued to him, but a contract by which a corporation binds itself to issue stock to a party renders him a stockholder." We suppose that this charge was given upon the theory, that if plaintiffs were stockholders in the company, they could not recover damages from its officers caused by their mismanagement of the company's affairs, unless they first made application to the company to sue in its own name and it refused to do so. We have already held, in considering the cross-assignment of the defendant in error, that the matters plead, if true, would have rendered it unnecessary for the plaintiffs to have applied to the corporation to bring the suit, and we deem it unnecessary to discuss the matter farther.

There was no evidence that the corporation ever "bound itself to issue stock" to plaintiffs, unless it is shown that Collier and Townes acted for the company in making the written contract. This would first have to be found by the jury before they could consider the question as to whether plaintiffs were stockholders, and if the only evidence of their being stockholders is furnished by the writing, it would seem that their stock was only potential, for they would not, as against the company, be entitled to it until they had fully performed their part

of the agreement.  We do not think that the charge should have been given.

As we understand the petition, plaintiffs sought only to recover on the theory that the contract sued on was the personal obligation of Collier and Townes, and not upon the ground that it was the contract of the corporation, and its officers, Collier and Townes, had so mismanaged and squandered its property as to prevent it from discharging its obligation to plaintiffs.  Therefore, under the theory upon which the suit was brought, we do not think it was error for the court to charge the jury that plaintiffs could not recover if Collier, when he signed the writing sued on, was acting for the company.

The issue made by the pleadings, as well as the evidence, that the mortgage was given with the knowledge and consent of plaintiffs, and that they knowingly received $5000 of the money borrowed on it, seems not to have been submitted to the jury.  If such matters are proved, they will estop the plaintiffs from recovering.

*Reversed and remanded.*

Delivered October 2, 1895.