McFARLAND v. SHAW, State Banking Com'r.
No. 1482—5740.

Commission of Appeals of Texas, Section A.

Jan. 6, 1932.

Clark, Harrell & Clark, of Greenville, for plaintiff in error.

John W. Goodwin, of Austin, for defendant in error.

SHARP, J.

Ethel McFarland instituted this suit in the district court of Fannin county against James Shaw, banking commissioner of Texas, to require him to approve her claim for $1,330.39, being the amount of money on deposit in the Ladonia State Bank to her credit at the time the Ladonia State Bank went into the hands of James Shaw, liquidating agent. James Shaw, defendant in error, answered that Ethel McFarland, her mother, Susie L. McFarland and brother, W. S. McFarland, were indebted to the Ladonia State Bank in the sum of $3,330.92 represented by a note in favor of that bank, and that the estate of C. S. McFarland had on deposit the sum of $720.12; that Susie L. McFarland had on deposit the sum of $1,439.63; that W. S. McFarland had on deposit the sum of $253.94, and that Ethel McFarland had on deposit the sum of $1,330.39, and that the liquidating agent had set off against the indebtedness owing to the Ladonia State Bank the sum of $1,178.85 of the deposit of Mrs. Susie L. McFarland, and that he set off against the note $1,178.85 of the deposit of Ethel McFarland and $120.61 of the deposit of W. S. McFarland, and that he had approved the claim of Ethel McFarland for the difference in her deposit and the amount set off in the sum of $151.85. He attached to his answer as an exhibit a copy of the note referred to, which will be hereinafter set out.

Plaintiff in error, Ethel McFarland, replied that she was not indebted to the Ladonia State Bank at the time it was taken over by James Shaw in any sum whatever; that her father, C. S. McFarland, was indebted to the First State Bank of Ladonia at the time of his death in the sum of approximately $3,300; that he left no will, and there was no administration upon his estate, and that she, together with her mother and brother, were the only heirs at law, and that, after the death of C. S. McFarland, the First State Bank renewed the indebtedness of her father with the express agreement and understanding that it should not be the personal obligation of Ethel McFarland, Susie L. McFarland, or W. S. McFarland, but that it was to continue to be an obligation of her father's estate. The defendant in error had recognized the agreement between the bank and the signers of the note by applying said note as an offset of the deposit in the bank at the time of its failure in the name of the estate of C. S. McFarland. She further alleged that the note attempted to be offset by the defendant in error was executed purely as a matter of accommodation to the officers of the bank and to keep alive the indebtedness owing by her deceased father; that the original indebtedness owing by her father was not released, and that neither she nor her mother nor her brother received anything of value whatever by reason of the execution of the note attempted to be offset; that by reason of such facts, the consideration for the note had wholly failed.

The trial of the case was before the court without a jury, and judgment was rendered in favor of plaintiff in error establishing her claim as an unsecured claim for the full amount of the deposit in the Ladonia State Bank. The trial judge filed findings of fact and conclusions of law. He held that the note referred to was a charge against the estate of C. S. McFarland, deceased, and not the personal or individual debt of plaintiff in error, and that the defendant in error was not entitled to set off the deposit in favor of plaintiff in error against the indebtedness owing by the estate of C. S. McFarland, deceased. Upon appeal, the Court of Civil Appeals modified the judgment so as to allow plaintiff in error's claim in the sum of $151.85, and affirmed the case in all other respects. 28 S.W.(2d) 563.

The Supreme Court granted a writ of error to review the opinion of the Court of Civil Appeals.

Plaintiff in error contends that the Court of Civil Appeals erred in holding that she was personally bound on the note which the defendant in error attempted to offset against the deposit she had in the Ladonia State Bank. The note in controversy reads as follows:

"Ladonia State Bank

"Ladonia, Texas, January 1, 1928.

"December 31, 1928, after date, without grace, I, we or either of us, for value re-

ceived, promise to pay to the order of the Ladonia State Bank, Ladonia, Texas, Thirty-three Hundred Thirty and 92/100 Dollars, with interest thereon at the rate of 8 per cent. per annum from maturity until paid. Ten per cent. upon the principal and interest thereon due shall be added as attorney's fees if placed in the hands of an attorney for collection or collected by suit. All signers and endorsers of this note waive demand, protest and non-payment, and we consent that the time of payment of this note may be extended without notice hereof.

"Payable at Ladonia State Bank, Ladonia, Texas, or at Greenville, Texas.

  "[Signed] Susie L. McFarland

      "Surviving widow of C.
       S. McFarland
   "W. S. McFarland
   "Ethel McFarland
      "Sole heirs of C. S. McFarland, deceased."

The trial judge, among other things, found as follows:

(a) "That at the time the note mentioned above was signed by the parties it was agreed by and between them and the First State Bank, Ladonia, that the signers were not to be personally liable but that said note would continue to be only an obligation of the estate of C. S. McFarland."

(b) "That the note which is attempted to be offset by defendant was executed under the same circumstances and with the same agreement between W. S. McFarland, Ethel McFarland and Susie L. McFarland and the Ladonia State Bank as the first note signed by W. S., Ethel and Susie L. McFarland to the First State Bank of Ladonia."

Based upon these findings of fact, the trial court held that the note signed by Susie L., W. S., and Ethel McFarland is a charge only against the estate of C. S. McFarland, deceased, and not the personal obligation of the parties executing the note.

Defendant in error contends that there is no ambiguity in the note; that on its face it is the joint and several obligation of the makers thereof; hence oral testimony contradicting or varying the same is not admissible.

■■ The rule is ancient and well settled that parol testimony cannot be received to contradict, vary, add to, or subtract from the terms of a valid written instrument. Jones on Evidence, § 434, p. 543. This same rule applies to contracts in the form of negotiable paper. "Negotiable notes are written instruments, and as such they can not be contradicted nor can their terms be varied by parol evidence; and that proposition is universally true where the promissory note is in the hands of an innocent holder." Jones on Evidence, § 494, p. 624. However, the rule has its exceptions. It is well recognized or es-

tablished that there are exceptions to the general rule which exclude parol evidence to explain written instruments, and they apply to negotiable paper as well as to other contracts. When the issue of fraud, surety, ambiguity, or want of consideration is raised, as between the original parties and those standing in the shoes of such parties or against those taking with notice, parol testimony is admissible to show the true facts. When properly presented by the pleadings and the evidence, the rule respecting the admissibility of extrinsic evidence is stated in 3 R. C. L. pp. 869 and 870, in the following language:

"Many of the exceptions to the parol evidence rule are quite as well settled as the general rule and require only a mere statement. It may not be contended for example, that, as between the parties to an instrument parol evidence is incompetent to show fraud, mistake, illegality, want or failure of consideration, to explain an ambiguity when such explanation is not inconsistent with the written terms, or to show that the writing is only a part of an entire oral contract between the parties, or that its obligation has been fully discharged by an oral collateral agreement. So in a controversy between the parties or others charged with notice proof may be made of a collateral agreement, which was the consideration for the instrument, or which postpones the legal operation of the writing until the happening of a contingency. And again, an instrument is to be construed, as in any other case, in the light of its subject matter, and the circumstances in which and the purposes for which it was executed, which evidence is always admissible in the construction of written contracts, in order to put the court in the position of the parties."

The question of innocent purchaser for value is not involved here. It was alleged, and the proof tended to show, that the note was signed by the parties at the request of the bank for the accommodation of the bank; that it was understood that the persons signing the note would not be personally liable thereon, but only the estate of C. S. McFarland, deceased, would be liable for the payment of same; that the bank kept in its possession the original note signed by C. S. McFarland, deceased; that the officers of the bank stated that they did not want the signers of the renewal note to be personally bound, but only wanted a new note in order that the debt might continue to be an obligation of the estate of C. S. McFarland, deceased, and suggested the wording on the renewal note. The trial court further found:

"I further find that after the death of the said C. S. McFarland the First State Bank of Ladonia, being desirous of renewing the obligation of C. S. McFarland, called in W. S. McFarland and requested that he, the plaintiff and Mrs. Susie L. McFarland renew the

debt of C. S. McFarland, and the said W. S. McFarland told the vice-president of said bank that they could not renew the note without becoming personally liable to said bank.

"I find that the duly authorized agent and Vice-President of the First State Bank of Ladonia informed the said W. S. McFarland that the First State Bank did not want the signers of the renewal note to be personally bound, but only wanted a new note in order that the debt might continue to be an obligation of the estate of C. S. McFarland, and that he informed W. S. McFarland that he would write his attorneys and ascertain how the note could be signed in order that the estate of C. S. McFarland would continue to be bound for the debt but the signers would not be personally bound, and that about ten days later said Vice-President of the First State Bank met W. S. McFarland and stated that his lawyers had advised him that if he and the plaintiff signed the note and added after their names the following words: 'Sole heirs of C. S. McFarland, deceased, and Mrs. Susie L. McFarland signed and added after her name the following words: 'surviving widow of C. S. McFarland,' that neither of them would be bound personally but that the estate of C. S. McFarland alone would be bound.

"I find that acting under this advice and under an agreement with the First State Bank that the signers would not be personally liable, plaintiff and W. S. McFarland signed a note for approximately the same amount as the note which had been signed by C. S. McFarland during his lifetime and added after their signatures the words 'sole heirs of C. S. McFarland, deceased,' and that Susie L. McFarland signed the note and after her name added the following words: 'surviving widow of C. S. McFarland.'

"I further find that this note was not accepted by the First State Bank of Ladonia in lieu of the debt owing to it by C. S. McFarland, but that the bank accepted the note above merely to continue the obligation against the estate of C. S. McFarland, and that the note of C. S. McFarland was not surrendered to the plaintiff nor to W. S. McFarland nor to Susie L. McFarland, and that none of these parties received any money or thing of value whatever by reason of the execution of this note."

■ This record invokes the well-settled principle of law that, unless the question of innocent purchaser for value is involved, as between the original parties and those standing in the shoes of such parties or against those taking with notice, parol testimony is admissible to show the real consideration for the note and to show that it was executed at the request of the officers of the bank, only as an accommodation note for the bank, and that it was understood and agreed by the parties at the time that the persons signing same would not be personally liable therefor, and that the estate of C. S. McFarland, deceased, would only be liable for the payment thereof. When such instrument suggests that it was signed for the purpose of holding liable only the estate of C. S. McFarland, deceased, or bears upon its face evidence of ambiguity, and this fact creates an uncertainty and suggests an inquiry concerning that uncertainty, the rule has been applied by the courts that parol testimony is admissible to show the real contract made by the parties. Central National Bank v. Lawson (Tex. Com. App.) 27 S.W.(2d) 125; King v. Wise (Tex. Com. App.) 282 S. W. 570; Central Bank & Trust Co. v. Ford (Tex. Civ. App.) 152 S. W. 700 (Writ Denied); Brady v. Cobbs (Tex. Civ. App.) 211 S. W. 802; First National Bank v. Jacobs, 85 W. Va. 653, 102 S. E. 491; Jones Brewing Co. v. Flaherty, 80 N. H. 571, 120 A. 432. See, also, the following authorities: Kelley v. Collier, 11 Tex. Civ. App. 353, 32 S. W. 428; Woldert Co. v. Bank (Tex. Civ. App.) 234 S. W. 124; Metcalf v. Williams, 104 U. S. 93, 26 L. Ed. 665; Burkhalter v. Perry & Brown, 127 Ga. 438, 56 S. E. 631, 119 Am. St. Rep. 344; Small v. Elliott, 12 S. D. 570, 82 N. W. 92, 76 Am. St. Rep. 630; Keidan v. Winegar, 95 Mich. 433, 54 N. W. 901, 902, 20 L. R. A. 705; Traynham v. Jackson, 15 Tex. 170, 65 Am. Dec. 152; 2 Clark & Skyles on Agency, § 565; Mechem on Agency, §§ 436, 437; 3 Ruling Case Law, pp. 1084–1086.

On page 1095, 3 Ruling Case Law, the rule is stated in the following language: "While it is conceded that if there is anything on the face of the paper which suggests a doubt as to the party bound, or the character in which any of the signers has acted in affixing his name, parol evidence is admissible between the original parties to establish the real intent, yet the view which obtained formerly with all courts, apparently, and still persists in some jurisdictions, deems instruments of the class herein considered not to show such an ambiguity as to warrant the introduction of extrinsic evidence. It is better in these cases, however, to hold that the signature is ambiguous, and hence subject to explanation by extrinsic evidence; and this is the modern view. According to sounder doctrine while, where one signs as agent of another, the prima facie presumption is that the words are merely descriptio personæ, and therefore that the one so signing is personally bound; yet it may be shown in an action between the original parties that it was not so intended, and that, in fact, the real intention was to bind the principal whose name was disclosed in the signature of his agent, or who was well known by the payee to be the real party to be bound. Although the agent may have contracted in his own name, nevertheless, it is competent to show, by parol, the real facts, and that the contract was made on behalf of the principal,

the agent not intending to assume any personal liability."

.But it is contended by defendant in error, and the Court of Civil Appeals so held in its opinion, that section 20 of article 5932 of the Negotiable Instrument Act, R. S., controls this case. Section 20 thereof reads as follows: "Where the instrument contains or a person adds to his signature words indicating that he signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized; but the mere addition of words describing him as an agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability."

If the issue of innocent purchaser for value was in this case, that contention might be true. The pleadings and evidence raise the issue, and the trial court so found, that the note was executed at the instance and under the direction of the officers of the bank; that the wording of the language following the signatures of each signer was suggested by the bank; that the bank made a special contract with the makers of the note excluding any personal liability on their part, and agreed that the note was to remain only as a liability against the estate of C. S. McFarland, deceased. The note upon its face shows that the makers thereof were not undertaking to sign as executors or as agents or as trustees or in a representative capacity of the estate of C. S. McFarland, deceased, but it was signed as the surviving widow and sole heirs of C. S. McFarland, deceased.

This record, as between the parties, involves the rule that, where, on reading the entire instrument, the intention of the parties is left in justifiable doubt, the courts of this state, as well as the courts of other states, will permit the introduction of parol testimony to remove the uncertainty. Central National Bank v. Lawson, supra; King v. Wise, supra; Megowan v. Peterson, 173 N. E. 1, 65 N. E. 738; Kerby v. Ruegamer et al., 107 App. Div. 491. 95 N. Y. S. 408; First Nat. Bank v. Wallis, 150 N. Y. 455, 44 N. E. 1038.

The case of Megowan v. Peterson involved the construction of section 20, which was adopted by that state, and the Court of Appeals of New York in that opinion held: "In this case, as we have seen, the defendant signed the note, and then added to his signature the word 'trustee.' He did not, in the instrument itself, disclose the fact that he was trustee for the creditors of Johnson & Peterson, so that, under the provisions of this statute, he would become personally liable upon the note, unless he could show that at the time of the delivery of the note to the plaintiffs he disclosed the fact that the consideration for which the note was given was for the benefit of the creditors of Johnson & Peter-

son, and that he gave the note as the trustee for such creditors. It is contended on behalf of the plaintiffs that his representative character must be disclosed upon the face of the note. This may be so in so far as innocent purchasers for value are concerned, but as to the payees named in the note we think a different rule prevails."

Again the court said: "We do not understand that the statute to which we have alluded was designed to change the common-law rule in this regard, which is to the effect that, as between the original parties and those having notice of the facts relied upon as constituting a defense, the consideration and the conditions under which the note was delivered may be shown. Benton v. Martin, 52 N. Y. 570, 574; Bookstaver v. Jayne, 60 N. Y. 146; Juilliard v. Chaffee, 92 N. Y. 529, 534; Reynolds v. Robinson, 110 N. Y. 654, 18 N. E. 127; Baird v. Baird, 145 N. Y. 659, 664, 40 N. E. 222, 28 L. R. A. 375; Blewitt v. Boorum, 142 N. Y. 357, 37 N. E. 119, 40 Am. St. Rep. 600; Schmittler v. Simon, 114 N. Y. 176, 21 N. E. 162, 11 Am. St. Rep. 621; Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32."

In the case of First Nat. Bank v. Wallis, supra, the action was upon a promissory note signed by Wallis, who added to his signature "President," and by Smith, who added to his signature "Treasurer." Andrews, C. J., in rendering the opinion, said: "It may be admitted that if the bank, when it discounted the paper, was informed or knew that the note was issued by the corporation, and was intended to create only a corporate liability, it could not be enforced against the defendants as individuals, who, by mistake, had executed it in such form as to make it on its face their own note, and not that of the corporation. But, according to the rules governing commercial paper, nothing short of notice, express or implied, brought home to the bank at the time of the discount, that the note was issued as the note of the corporation, and was not intended to bind the defendants, could defeat its remedy against the parties actually liable thereon as promisors."

█ It is further contended by plaintiff in error that the note in controversy was without consideration as to the makers of the note, and that they are not liable personally for the payment thereof. The instrument itself is sufficient to make a prima facie case. The Negotiable Instrument Act, section 24 of article 5933, R. S. 1925, recognizes this presumption by providing that: "Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

The record shows that C. S. McFarland, deceased, died intestate and left a considerable estate, consisting of real and personal property, subject to the payment of his debts, that no

administration was ever had upon his estate, and that the makers of the note in controversy were his sole heirs, entitled to receive the assets of his estate, and that they did receive and take possession of the assets of his estate. This fact would also make a sufficient prima facie consideration for the execution of the note. Boyd v. Johnston, 89 Tenn. 284, 14 S. W. 804. In that opinion, Judge Lurton, who afterwards became Associate Justice of the Supreme Court of the United States, in speaking for the court, said: "Regardless of any personal consideration, the assets of the estate are a consideration supporting the promise to pay. The fact of the execution of such a note is prima facie evidence of assets, because they are the legal consideration upon which the law presumes the note to rest. Therefore it is not incumbent on the payee to prove assets. This presumption of a consideration may, however, be rebutted between the original parties, by the defendant showing that, in fact, there was a deficiency of assets, and therefore a failure of consideration to support the note. When such deficiency is shown, the liability will be diminished to the extent of such failure of consideration. Bank v. Topping, 13 Wend. [N. Y.] 557; Snead v. Coleman, 7 Grat. [Va.] 300 [56 Am. Dec. 112]; Daniel, Neg. Inst. sec. 263."

Article 3314, R. S. 1925, in part, reads as follows: "When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law; subject however, to the payment of the debts of the testator. * * *"

■■ Our Supreme Court has established a well-settled rule that heirs, devisees or legatees who receive property belonging to an estate, against which an unpaid claim exists, do not thereby become personally liable to the claimant for the value of the property so received; the remedy being to enforce the statutory lien against the property in their hands. It is also equally well settled that, if the heirs, devisees, or legatees have disposed of the property or so changed its form as to render it impossible of identification, a personal judgment or recovery may be had of them for its value. Blinn v. W. J. McDonald, 92 Tex. 604, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931; Smith v. Patton (Tex. Com. App.) 241 S. W. 109, 117; Faulkner v. Reed (Tex. Com. App.) 241 S. W. 1002; Hughes v. Hughes (Tex. Civ. App.) 264 S. W. 579.

■ The last-discussed phase of the case has not been fully developed either by the pleadings or the evidence, and therefore we think that the ends of justice may be better subserved by reversing and remanding the case for another trial, in order that the parties may, if they desire, amend their pleadings. Blinn v. W. J. McDonald, supra; Smith v. Patton, supra; Faulkner v. Reed, supra; Camden Fire Ins. Co. v. Yarbrough (Tex. Com. App.) 215 S. W. 842, 844.

Therefore we recommend that both the judgments of the Court of Civil Appeals and the trial court be reversed, and this cause remanded to the trial court for another trial in accordance with this opinion.

CURETON, C. J.

Judgments of the Court of Civil Appeals and the district court are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.