**BURLINGTON STATE BANK v. TUCKER et al.**

No. 7969.

Court of Civil Appeals of Texas. Austin.

May 16, 1934.

Rehearing Denied Nov. 21, 1934.

E. A. Wallace, of Cameron, for appellant.

Henderson, Kidd, & Henderson, of Cameron, for appellee State Nat. Bank of Garland.

BAUGH, Justice.

Suit by appellant against Mrs. J. C. Tucker upon a note for $1,072, dated December 29, 1931, signed by her alone, and for foreclosure, of said bank's asserted lien on 30 shares of stock in said bank, carried on the books of the bank in her name. The State National Bank of Garland intervened, sought judgment on a note owned by it in the sum of $2,000, dated January 4, 1932, executed by Mrs. J. C. Tucker and husband, and for a foreclosure of its lien on the same 30 shares of stock which had been pledged by Tucker and wife as security for the latter note. Trial was to the court without a jury, and judgment rendered that appellant take nothing; but in favor of the Garland bank on its intervention both on its note and for foreclosure of its lien on the stock, from which the Burlington State Bank has appealed. The Tuckers have filed no briefs.

The note sued upon was given in extension and renewal of a note for $1,000, dated February 7, 1931, to which the name of Mrs. J. C. Tucker was signed. Mrs. Tucker was the only daughter of T. F. Hardy, who was then president of the Burlington State Bank and owner of 40 shares of stock therein. He was then in poor health and confined to his bed. His son-in-law, J. C. Tucker, was a director of said bank. It was alleged by appellant that the original note was executed for money lent for the use and benefit of T. F. Hardy, and though signed by Mrs. Tucker, she signed for her father, and that it was in reality her father's obligation. The money was on the same day deposited to the credit of J. C. Tucker and immediately checked out by him to a Waco bank. It was not shown whether or not T. F. Hardy got the benefit

of it. The original note was presented to the bank by J. C. Tucker, and not by Mrs. Tucker, and was accepted by the bank with only her signature on it. On June 1, 1931, T. F. Hardy indorsed and transferred his stock in appellant bank to Mrs. J. C. Tucker, but no transfer thereof on the books of the bank was then made. In July, 1931, T. F. Hardy died intestate, and no administration was had upon his estate. On December 16, 1931, at the request of Mrs. J. C. Tucker and husband, made to the officers of appellant bank, the stock certificates indorsed to Mrs. Tucker by her father on June 1, 1931, were surrendered to the bank and new certificates for the same amount of stock in said bank issued in the name of Mrs. J. C. Tucker, and then delivered to her husband, but were antedated as of August 1, 1931. These certificates were thereafter pledged by Tucker and wife as security for the note of J. C. Tucker sued on by the Garland bank as intervener.

The trial court's findings of fact, amongst others not essential to a disposition of this appeal, were that there was no evidence that Mrs. J. C. Tucker ever signed either the original or the renewal note, nor that the proceeds thereof were obtained by her order or direction; nor that any of the proceeds therefrom were ever received by her for the benefit of her estate or otherwise, or for necessaries for herself or children.

Appellant's contentions are:

First, that the undisputed evidence shows that the note sued upon was given for the benefit of Mrs. Tucker's separate estate, with the assent and assistance of her husband, and was therefore a valid obligation without her husband's joinder.

Second, that said notes were given to settle the bank's claim against her stock therein, and constituted a valid obligation without her husband's signature.

Third, that being a valid obligation against Mrs. Tucker, the bank had a right to offset against it dividends from her stock, or proceeds from the liquidation of said bank (it having been voluntarily closed and in course of liquidation) from the time of the origin of the debt.

Fourth, that its lien upon her stock was superior to that of the Garland bank, because the transfer of the certificate by Mrs. Tucker and husband was not made as provided by the terms of the certificate, nor as required by the express terms of article 535, R. S. 1925, as amended by Acts 1929, 41st Leg., 1st Called Sess., p. 159, c. 60, § 1 (Vernon's Ann. Civ. St. art. 535).

Two issues are thus presented: First, whether appellant had a valid obligation against Mrs. Tucker; and, second, if so, whether it had a lien upon the stock held by her in said bank to secure the payment of that obligation. There is no contention that either Mrs. Tucker or her father, T. F. Hardy, ever pledged or offered to pledge or hypothecate any of said stock as security for the original note or for the one sued upon.

Adverting to the second question first, we think that appellant bank in no event had any lien upon said stock either in the hands of T. F. Hardy or of Mrs. Tucker. There are no allegations or proof that its capital was impaired, that any assessment against its stockholders was necessary or contemplated, nor that such lien was "necessary to prevent a loss upon a debt previously contracted in good faith," a condition precedent to authority of the bank to make a loan to a stockholder under a voluntary pledge of his stock as security. See article 524, R. S. 1925. And, where a bank is forbidden by statute to make a loan upon the security of its own stock, as stated in 3 R. C. L. 393, "it is difficult to understand upon what legal principle it could claim the right to an equitable lien." 7 C. J. 497; 6 Tex. Jur. 163. There is neither pleading nor proof in this case that either Mrs. Tucker or T. F. Hardy was insolvent, nor that such lien was necessary to replace impaired assets of appellant bank, nor that any statute of the state gave them such lien, nor that any provision in the bank's charter or by-laws gave them any such lien. See Thompson on Corporations (3d Ed.) vol. 5, p. 874 et seq. No such lien existed at common law, none under any statute called to our attention, and, so far as the record shows, none under the charter of the corporation. Under such circumstances, we think appellant failed to show itself entitled to any equitable lien upon said stock, even if it be conceded that it held a valid obligation against Mrs. Tucker.

The note held by the Garland bank on which it intervened was dated January 4, 1932, executed by J. C. Tucker, and the stock in question then pledged by Tucker and wife to secure it. The note sued upon by appellant was dated December 29, 1931, thirteen days after the stock certificates had been issued to Mrs. Tucker and delivered to her husband. Appellant bank closed for voluntary liquidation on January 26, 1932. Thus it appears that appellant was a going concern conducting a banking business at the time said note was executed to appellant bank,

and also at the time the Tuckers pledged said stock as security for intervener's note. At that time, therefore, assuming that its obligation against Mrs. Tucker was valid, she was merely a debtor to appellant bank, as any other debtor, and it acquired no lien on said stock to secure that debt. That being true, there was no impediment to her transfer of her stock to a third party, absent a fraudulent purpose in doing so to defeat her creditors. Such intent was neither pleaded nor proved.

■■■ Appellant insists, however, that in the face of the recital in the stock certificate and the amendment to art. 535, R. S. (Vernon's Ann. Civ. St. art. 535), providing that such shares of stock "shall be transferable only on the books of the corporation, and it shall be the duty of the officers of the corporation to make such transfer upon the books at the request of the transferror or transferee," a failure to comply with same vested no rights in intervener to the stock in question. While said amendment to the statute was made subsequent to our opinion in Kerr v. Tyler Guaranty State Bank, 283 S. W. 601, we think the amendment does not invalidate a bona fide transfer to an innocent purchaser, even though such transfer was not registered on the books of the corporation, where such transfer does not affect the rights of the corporation which issued the stock. Such statutes, as stated in the Kerr Case, are for the protection and benefit of the corporation itself; and, where its rights are not jeopardized by transfer of its stock, we can see no reason for holding such transfer invalid, where made in good faith for a valuable consideration, even though not registered on the books of the corporation. Appellant bank, so far as the record shows, had made no stock assessment, did not claim its stock or assets were impaired, no question of voting said stock was involved, and no dividends had been paid to the record owner. Clearly the intervener had a right, under the statute, to accept said stock as collateral, and, if necessary, to acquire absolute title thereto in the collection of its debt. Article 524, R. S. 1925; 6 Tex. Jur. 220.

■■■ The next question relates to the validity of appellant's note against Mrs. Tucker, a married woman. It is appellant's contention that the original note was in fact the obligation of her father, and for his benefit, though signed by her. If it were a charge against T. F. Hardy's estate, the proper method of collection would have been through administration proceedings on his estate. We think the evidence was sufficient to show that the original note was executed and accepted by the bank as the obligation of T. F. Hardy. There was some indication that J. C. Tucker appropriated the proceeds therefrom to his own use, but the evidence was not conclusive as to that. But, so far as the bank was concerned, it was lent for the use and benefit of Hardy. If it became a binding obligation against his estate, that estate passed upon his death to Mrs. J. C. Tucker, his daughter and sole heir, charged with whatever debts Hardy owed. That estate became her separate property, subject to her control and management, and she had authority to contract with reference thereto, within statutory limitations, without being joined by her husband. While the trial court found that there was no evidence that she signed either of said notes, her name was signed to said notes, she did not deny their execution under oath, and, if she did not sign them, there was evidence indicating that, if her husband signed her name, he did so as her agent. If, therefore, the original note was a charge against the estate of T. F. Hardy, which she inherited and which was liable for its payment, and she thereafter, as sole heir, and for the purpose of obviating the expense and necessity of administration upon her father's estate, renewed said note after taking possession of his estate as her separate property, for the protection thereof, and to prevent appellant bank from establishing a lien upon that estate, said note would be binding upon her without the necessity of her husband's signature thereon. Neither she nor her husband testified; nor did she in her pleadings deny her signature nor that her husband was authorized to sign same as her agent. If he signed her name as her agent in the premises, and it was otherwise a binding obligation against her, and she placed the estate of her father beyond the reach of his creditors or so changed same as to render it impossible of identification, appellant bank was entitled to a personal judgment against her. McFarland v. Shaw (Tex. Com. App.) 45 S.W.(2d) 193; Hughes v. Hughes (Tex. Civ. App.) 264 S. W. 579; article 3314, R. S. 1925. Her father's obligation would not under said statute become her personal obligation; but she could, for the protection of her inheritance, validly assume it, and there was some evidence that such was the basis on which the renewal note, herein sued upon, was executed. The case, however, in this respect was not developed. The trial court erred in this state of the record in rendering judgment in favor of Mrs.

Tucker and in his findings that there was no evidence that the note sued upon was not executed for the benefit of her separate estate.

For the reasons stated, the judgment in favor of intervener is affirmed. That denying the bank any recovery against Mrs. J. C. Tucker is reversed, and the cause remanded for another trial.

Affirmed in part, and in part reversed and remanded.