*No. 6104.*

## THE LIFE ASSOCIATION OF AMERICA *v.* F. M. GOODE.

1. PRIVATE CORPORATION DISSOLVED.—Upon the dissolution of a private corporation all actions at law against it abate.
2. SAME—REVIVAL OF SUITS AT LAW.—The statutes of this State do not provide for the further prosecution of an action at law against a foreign corporation after its dissolution, against its legal representative.
3. SAME.—It would seem that a suit at equity abated by such dissolution might be revived.
4. SAME—LIMITATION.—Limitation will run against a bill of revivor to make proper parties, such existing, who represented the defunct corporation and who could be made parties.

5. FRAUD—NOTICE OF.—A plaintiff alleging fraud is chargeable with notice of such charge thereafter so as to prevent a suspension of limitation against him by reason of such fraud.

6. LIMITATION AGAINST REVIVOR.—From November, 1879, until May 1885, was sufficient to bar a bill of revivor against the representative of a foreign corporation; after allowing all reasonable time after such dissolution to make parties before the statute of limitations should be allowed to run.

7. PROCEEDINGS AD REM.—A proceeding to subject lands in Texas to the debts of a foreign defunct corporation must be brought within the time allowed by the statutes of limitation.

8. INSURANCE COMPANY—FRAUDULENT REPRESENTATIONS.—The representations of agents of an insurance company to its solvency are not disproved by the fact that subsequently the company failed.

9. FACT CASE.—See facts where representations as to solvency of an insurance company were not shown to have been false or fraudulent.

APPEAL from Grayson. Tried below before the Hon. Richard Maltbie.

The statement of the nature and result of the suit below made in appellant's brief is given: March 1, 1879, suit was brought in the district court of Grayson county against the Life Association of America by F. M. Goode to rescind two contracts of life insurance for fraud in their procurement and recover one thousand six hundred and thirty dollars premiums paid with interest. Writ of attachment was sued out and levied upon lands in the State. Judgment was rendered against said association, from which it appealed and the case was reversed and remanded. May 4, 1885, second amended petition was filed, making William S. Relfe, John F. Williams and Alfred Carr parties defendant, said petition and trial amendment allege that at various times from September 30, 1872, to April 19, 1875, plaintiff paid said association one thousand six hundred and thirty dollars, in consideration of which, on September 30, 1872, it issued a policy of insurance on the life of said Goode for ten thousand dollars; that at that time and prior thereto, and at the various times of paying premiums, Hood, Shannon and Clark, general agents for said association, which was a corporation, represented that it was solvent and responsible; that plaintiff relied on said representations, and was induced thereby to take out said policy and pay said premiums, but that said representations were false and fraudulent, and known by said agents to be false and fraudulent

when made. That on December 31, 1877, said association, by fraudulently representing it to be solvent, induced plaintiff to surrender said ten thousand dollar policy, and take instead a paid up Tontine policy for one thousand two hundred and fifty dollars; that at the time said Tontine policy was issued and said representations made it was well known to said agents that said association was insolvent and unable to meet its obligations; that it afterwards discontinued its business, and on November 10, 1879, was adjudged insolvent by the circuit court of St. Louis, Missouri, the corporation dissolved, its officers enjoined from doing business and ordered to transfer its property to W. S. Relfe, superintendent of the insurance department of Missouri, who was placed in charge of its business for the benefit of its creditors and policy holders; that afterwards said Relfe was succeeded in said office by John F. Williams, and he in turn by Alfred Carr, who is vested with the same powers, duties and obligations, as was formerly, the said Relfe; that said association was the owner of certain real estate in Grayson and Lamar counties, Texas, described in said petition which had been attached herein; that plaintiff knew of no other creditors of said association in this State except stockholders and policy holders, and that he is entitled to have his claim satisfied out of said property, asked for judgment establishing his claim, for foreclosing his lien, and that a receiver be appointed to take charge of said property with the necessary powers, and that defendants and others be enjoined from removing or disposing of said property. Defendants demurred generally and specially; excepted that the action was barred; that the petition showed that the association was dissolved, and the suit abated; that it did not show what were the Missouri laws governing dissolved corporations, and that under such laws this action could be maintained; that plaintiff's claim had not been presented to the superintendent; that it does not show surrender value of plaintiff's policy, and that preference claims have all been paid. Defendants also pleaded in abatement and bar of the action and of the attachments, the dissolution of defendant, the life association; and that this court had no jurisdiction, but that jurisdiction was with the circuit court of St. Louis; and that the proper bonds and affidavits for attachment had not been made. Defendants further answered by general denial and a special plea of dissolution of the corporation, plea of statute of limitation, plea of jurisdiction,

and that there was a large number of creditors and policy holders in Texas, setting them up; that the Texas liabilities amount to more than the Texas assets; that the property had vested in defendants, Relfe, Williams and Carr as superintendents of the insurance department of Missouri, long before they were made parties and before relief was asked against them; that plaintiff had derived benefits under the contracts and that parties could not be placed statu quo. They also plead accord and satisfaction.

The case was tried before a jury May 18, 1886, verdict for plaintiff and judgment against the life association for two thousand eighty-seven dollars and fifty cents, with eight per cent interest. June 5, over defendant's objection, said judgment was set aside and judgment rendered against all the defendants in accordance with plaintiff's prayer. Motion for new trial; exceptions and appeal by defendants. Additional facts necessary are in the opinion.

*J. W. Finlay* and *G. W. Pasco*, for appellants: 1. The petition shows that the claim is barred by the statute of limitation, and was so barred long before the bringing of suit against defendant Carr. (Rev. Stat., arts. 3203 to 3208; Bremond v. McLean, 45 Texas, 10; Wood on Limitations, p. 334, sec. 158; Insurance Laws of Missouri, compiled by George D. Reynolds, 35 and 54; Rev. Stat. of Missouri, sec. 6043; Life Association v. F. M. Goode, 2 Texas Law Review, 151; Relfe v. Rundle, 13 Otto, 222; Wood on Limitations, p. 622, sec. 293; Henderson v. Kissam, 8 Texas, 46.)

2. The court erred in overruling defendant's second exception, because the corporation had been dissolved. (Life Association v. F. M. Goode, 2 Texas Law Rev., 151; Relfe v. Rundle, 13 Otto, 222.)

3. The court erred in appointing a receiver and placing in his hands the Texas assets, because the superintendent of the insurance department of the State of Missouri, was, and is the proper officer to take charge of the assets and wind up the affairs of the life association. The attachment had been quashed and no injunction had been issued.   .

4. The representations of solvency were true when made, and the fact that the association subsequently became insolvent would not authorize a rescision of the contract. (Bigelow on Fraud, 406, 410, 411; 5 Wait's Act. & Def., 509, 510.)

*A. E. Wilkinson,* for appellees: 1. Upon limitation: Tilton v. Cofield, 93 United States, 163; Flanagan v. Pearson, 61 Texas, 304.

2. Upon right to pursue the assets of the corporation after its dissolution. (Mosby v. Burrow, 52 Texas, 376; Morawetz on Corportions, sec. 664; Curran v. The State of Arkansas, 15 How., 304.

3. The property in Texas was properly subjected to the judgment. (Moseby v. Burrow, 52 Texas, 396; Wharton on Conflict of Laws, secs. 390, 390a, 390b, and authorities there cited; F. & M. Ins. Co. v. Needles, 52 Mo., 17; Rorer's Interstate Law, 138; Taylor v. Columbian Life Ins. Co., 14 Gray, 353; Willets v. Waite, 25 N. Y., 577; Paine v. Lester, 44 Conn., 196.)

4. The representations were fraudulent. The speedy failure of the company, and its utterly bankrupt condition when it did fail, is sufficient evidence that it was a rotten thing from the first. The representation that it possessed a cash surplus of one million dollars over all liabilities was definite enough, and the result shows could not possibly have been true when made. A contract of life insurance is different from most others, in that it is intended as a protection for the distant future, and it is material to the insured that it should not only be solvent then, but so sound as to give assurance that it will be solvent in twenty or fifty years. It is no reply to show that it was for several years before its failure in a condition to pay its losses as they, from time to time, occurred.

STAYTON, CHIEF JUSTICE. Appeal from Grayson county, on March 1, 1879, the appellee brought an action against the Life Association of America, a corporation chartered under the laws of the State of Missouri, to recover sixteen hundred and thirty dollars, with interest, which he claimed to have paid in the corporation on policy of insurance issued to him in the year 1872.

He based his claim on averments that the corporation was insolvent at the time it issued the policy to him, and so continued until it was dissolved by a judgment rendered by a circuit court in the State of Missouri, on November 10, 1879.

He alleged that the insolvency of the corporation was known to its agents, who induced him to take out a policy, and that they falsely, fraudulently and repeatedly informed him that

the corporation was solvent, and thereby deceived him and induced him to procure a policy for ten thousand dollars on his life, and thereon to pay the premiums he now seeks to recover.

Pending the action the corporation was dissolved. On the dissolution of the corporation, in accordance with the laws of the State of Missouri, all the property belonging to it was transferred to W. S. Relfe, "Superintendent of the Insurance Department of the State of Missouri," in a mode which was held in the case of Relfe v. Rundle (103 U. S., 222), sufficient to pass title to its property to Relfe, in his official character.

It was also held in the same case, that this superintendent of the insurance department of the State of Missouri, by reason of the laws of the State of Missouri, the charter of the association and other attendant facts, became the representative of the dissolved corporation in States other than the State of Missouri.

As to the entire correctness of the propositions announced in that case, it is unnecessary to express any opinion.

In succession Relfe was followed in the superintendency by John F. Williams and Alfred Carr. After the dissolution of the corporation a judgment was rendered against it, in favor of the appellee, without making any new party defendant.

From that judgment the superintendent prosecuted an appeal, and on its hearing the judgment was reversed.

On that appeal it was held that the action abated; there being no law in force in this State authorizing a pending action, by or against a private corporation, incorporated under the laws of another State, to be prosecuted after the dissolution of such a corporation.

It was further held that there was no statute in force in this State authorizing the further prosecution of the action after the dissolution of the corporation. (Life Association of America v. Good, 2 Texas Law Review, 151.)

On May 4, 1885, the appellees filed new pleadings by which, for the first time, defendant, other than the dissolved corporation, was made. By that pleading Relfe, Williams and Carr were made defendants, and they, by demurrer, urged the defense of limitation, which was overruled.

That upon the dissolution of the corporation the action abated there can be no question. (Bank v. Colby, 21 Wall., 614; Mumma v. Potomac Co., 8 Peters, 281; Morawetz on Corporations, 1031.)

At law an action abated by the death of a sole defendant ceases for all purposes, is entirely dead and can not be revived. This rule, however, has in England, and in most, if not all, of the States of this Union, been so changed by statute as to authorize the further prosecution or defense of the action by the legal representative or heir of the deceased person when the cause of action is one that survives.

Such statutes, in force in this State, do not, however, apply to foreign corporations. The rule in the courts of equity is thus stated: "An abatement, in the sense of the common law, is an entire overthrow or destruction of the suit, so that it is quashed or ended. But, in the sense of a court of equity, an abatement signifies only a present suspension of all proceedings in the suit, for the want of proper parties capable of proceeding therein. At common law a suit, when abated, is absolutely dead. But, in equity, a suit when abated, is (if such an expression be allowable) merely in a state of suspended animation, and it may be revived." (Story's Equity Pleading, 354; Mitford's Chancery Pleading, 69, 72.) This is done by a bill of revivor. (Story's Equity Pleading, 354, 371; Mitford's Chancery Pleading, 72, 83; Adams's Equity, 404.)

If the pleading filed on May 4, 1885, may be deemed a bill of review, and the rule in equity be applicable to the case, then the inquiry arises whether the statutes of limitation ran from the time of the dissolution of the corporation until that pleading was filed.

There can be no claim that the running of limitation was suspended by reason of concealed fraud at any time subsequent to the institution of the action against the corporation on March 1, 1879, for the action was brought on the ground of fraud through which the appellee was alleged to have been induced to take a policy and pay the premiums which he now seeks to recover.

Fraud can not be deemed concealed from a plaintiff after he alleges its existence and bases his right to a recovery on that fact.

From the time the corporation was dissolved until March 1, 1885, a sufficient time elapsed to bar the claims of the appellee, and the question arises whether limitation ran during that interval.

The rule in equity is: that limitation may be pleaded in bar to a bill of review. (Story's Equity Pleading, 831; Mitford's

Chancery Pleading, 290; 2 Daniels's Chancery Pleading and Practice, 1542, 1543; Wood on Limitation, 296; Angell on Limitation, 325; Hollingshead's Case, 1 P. Williams, 742; Richards v. Insurance Company, 8 Cranch, 91.)

In the absence of a statute suspending the running of the statutes of limitation on the death of a plaintiff or defendant, by analogies to other statutes, many courts have held that they should be held suspended for a reasonable time, and this period has been usually fixed at one year. (Angell on Limitation, 325; Schermerhorn v. Schermerhorn, 5 Wend., 514; Huntington v. Brinckerhoff, 10 Wend., 282; Coffin v. Cottle, 16 Pick., 383; Baker v. Baker, 13 B. Monroe, 409; Walker v. Peay, 22 Ark., 109; Wilcox v. Huggins, 2 Strange, 907.)

If it be conceded that article 3218, Revised Statutes, which is in terms applicable to cases in which an executor or administrator may be appointed, ought to be applied in a case in which action abates by the dissolution of a corporation, this would not relieve the appellee, for more than five years elapsed between the time the action abated and the time pleadings were filed to revive it.

If then, we apply the equitable rule in a case of abatement of suit by the death of a sole party, and give to the appellee the benefit of every statute bearing any analogy to the question before us, it is evident that even then his action was barred by limitation; and, this appearing from his petition, the exception setting up the bar should have been sustained.

It is insisted that after the dissolution of the corporation the proceeding became one *in rem*, by reason of the fact that there was real property within this State that belonged to the dissolved corporation, out of which the appellee was seeking to enforce the payment of his claim.

It matters not what the character of the action may be, whether *in personam* or *in rem*, for in either case it must be brought within the time prescribed by law.

In legal contemplation there was no action pending through which the property of the dissolved corporation could be subjected to the payment of the appellee's claim after November 10, 1879, until May 4, 1885, and during this interval there was no want of parties against whom the action might have been prosecuted.

There is another ground on which the judgment in this case would have to be reversed.

The representations claimed to have been made by agents of the corporation related to its pecuniary ability to meet losses covered by its policies, and if these representations were such as the agents had authority to make it must appear that they were not substantially true to give right to recover premiums paid.

The uncontroverted evidence shows that the corporation had pecuniary ability to pay all losses accruing until about two years before its dissolution, and the great preponderance of the evidence shows that it had ability to pay all losses to policy holders up to the time of its dissolution.

There is no evidence tending to show that the corporation was not entirely solvent at the time the appellee obtained the policy and paid the premiums which he now seeks to recover, but there is evidence that it became insolvent long after, through a transaction by which it purchased a controlling interest in the stock of another insurance company.

The evidence shows that, had the policy held by the appellee become payable at any time prior to the tenth of November, 1879, it would have been paid.

Under this state of facts we know of no rule of law that would entitle the appellee to recover premiums paid. The policy was not void, the risk attached, and for about seven years the appellee had the benefit of insurance and the beneficiary would have received the sum due on the policy had he died. The premiums were to be and were paid annually, and this was to continue until the death of the insured or the time arrived when the policy was made payable without reference to his death.

The facts proved did not authorize a verdict for the appellee. For the errors of the court in refusing to grant a new trial and overruling the exception that set up the defense of limitation the judgment will be reversed and the cause remanded. It is so ordered.

*Reversed and remanded.*

Opinion delivered June 1, 1888.