CANADIAN COUNTRY CLUB et al. v. JOHNSON et al. (No. 753.)

(Court of Civil Appeals of Texas. Amarillo. April 10, 1915. On Motion for Rehearing, May 22, 1915.)

1. CORPORATIONS ⊜⇒206—ACTIONS BY STOCKHOLDERS—CONDITIONS PRECEDENT.

Stockholders may sue on behalf of the corporation without first demanding action by the officers, where the facts show that it would be useless to request them to sue, or where the facts are equivalent to a refusal to sue.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 791–796; Dec. Dig. ⊜⇒206.]

2. CORPORATIONS ⊜⇒320—ACTIONS BY STOCKHOLDERS—CONDITIONS PRECEDENT.

Where a majority of the directors of a corporation and some stockholders acquired property of the corporation subject to a lien for a sum less than the value of the property, and claimed the property adversely to the corporation and other stockholders, other stockholders could sue for the recovery of the property without first demanding that the directors should sue.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. ⊜⇒320.]

3. CORPORATIONS ⊜⇒630 — FAILURE TO PAY FRANCHISE TAX—EFFECT.

A corporation which fails to pay the franchise tax under Vernon's Sayles' Ann. Civ. St. art. 7379, may not do any business or sue or defend a suit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2482–2486; Dec. Dig. ⊜⇒630.]

4. CORPORATIONS ⊜⇒630—ACTIONS BY STOCKHOLDERS—GROUNDS.

Where a corporation has forfeited its right to do business because of its failure to pay its franchise tax, equity will entertain a suit by stockholders when necessary to protect the interests of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2482–2486; Dec. Dig. ⊜⇒630.]

5. CORPORATIONS ⊜⇒546 — RECEIVERS — APPOINTMENT—PARTIES.

Where a corporation has forfeited its right to do business because of its failure to pay its franchise tax, and a majority of the directors and some stockholders claim title to land adversely to the corporation, other stockholders may sue for the property, and where they join the corporation and the officers and the stockholders claiming the property, the court may appoint a receiver to take charge of the corporate property, pay debts, and distribute its assets to those entitled thereto, for Rev. St. arts. 1201 et seq., relating to insolvent corporations and the right of stockholders to sue to dissolve, does not prescribe an exclusive remedy.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2176, 2177; Dec. Dig. ⊜⇒546.]

6. CORPORATIONS ⊜⇒320—ACTIONS BY STOCKHOLDERS—CONDITIONS PRECEDENT.

Where the majority of the officers of a corporation, and some of the stockholders, acquir-

ed land of the corporation, incumbered by a vendor's lien, and asserted title to the land adversely to the corporation, and the officers and the stockholders claimed the land under illegal corporate acts, other stockholders, suing on behalf of themselves and all other stockholders for the protection of the rights of the corporation 'in the land, were not required to tender payment of the vendor's lien.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. ☞320.]

**7. CORPORATIONS ☞404 — DISPOSITION OF CORPORATE PROPERTY.**

The action of a majority of the stockholders of a corporation in transferring real estate of the corporation subject to a vendor's lien, not evidenced by proper minutes and by an instrument required by statute for the conveyance of land, does not pass title.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1626–1628, 1633–1639; Dec. Dig. ☞404.]

**8. CORPORATIONS ☞312 — DIRECTORS — POWERS.**

The directors of a corporation occupy a fiduciary relation toward it and its stockholders, and a purchase of corporate property by them may be avoided at the option of the corporation, whether the transaction is fair or not, and though the corporation was represented by other directors who would be competent to act for it in the same kind of transaction with an outsider.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1376–1386, 1388–1392; Dec. Dig. ☞312.]

**9. BILLS AND NOTES ☞534 — STIPULATION FOR ATTORNEY'S FEES — RECOVERY OF ATTORNEY'S FEES.**

A holder of a note, stipulating for attorney's fees in case of action thereon, may not recover attorney's fees, where he does not bring suit, but compels another to do so, and unsuccessfully contests the right to maintain the action.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1946, 1947; Dec. Dig. ☞534.]

**10. CORPORATIONS ☞312 — ACQUISITION OF PROPERTY BY DIRECTORS AND STOCKHOLDERS—IMPROVEMENTS.**

Where a majority of the directors of a corporation and some of the stockholders acquired real estate of the corporation incumbered by a vendor's lien, they could not, as against nonassenting minority stockholders, recover for improvements or work done on the land, where the improvements were not of a permanent nature.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1376–1386, 1388–1392; Dec. Dig. ☞312.]

**On Motion for Rehearing.**

**11. CORPORATIONS ☞592—FAILURE TO PAY FRANCHISE TAX—DISSOLUTION.**

Failure of a corporation to pay its franchise tax is not an act of dissolution.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2373–2375, 2378, 2379, 2381, 2390, 2401; Dec. Dig. ☞592.]

**12. CORPORATIONS ☞621 — RECEIVERS — APPOINTMENT.**

Under Rev. St. art. 2128, authorizing the appointment of a receiver of a corporation which has forfeited its corporate rights, the court may, at the suit of a stockholder suing for a corporation which has forfeited its right to do business for nonpayment of its franchise tax, and which is insolvent, appoint a receiver

and wind up its affairs and adjust the rights of stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2461–2469, 2471; Dec. Dig. ☞ 621.]

**13. CORPORATIONS ☞320 — TRANSFER OF PROPERTY—ESTOPPEL.**

Where the majority of the officers of a corporation and some stockholders took possession of corporate property pursuant to a vote of stockholders, unaccompanied by any valid conveyance, minority stockholders, not present at the meeting and not inducing the officers and the stockholders to take possession of the land, were not estopped from suing on behalf of the corporation to recover the property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. ☞320.]

**14. SUBROGATION ☞33—EXTENT—TRANSFERS —CONTRACTS.**

A corporation acquired real estate subject to a vendor's lien note. The note was paid by a majority of the officers of the corporation and some stockholders, and the note and lien securing it were subsequently transferred to them by the vendor. They also claimed the land adversely to the corporation under corporate proceedings conveying no title. *Held,* that under the transaction only the interest of the vendor in the note and lien were transferred by subrogation.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 96–98; Dec. Dig. ☞33.]

Appeal from District Court, Hemphill County; F. P. Greever, Judge.

Action by J. F. Johnson and another against the Canadian Country Club and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

H. E. Hoover and Fisher & Palmer, all of Canadian, for appellants. Frank Willis, of Canadian, for appellees.

HUFF, C. J. J. F. Johnson and E. H. Brainard brought suit against the Canadian Country Club, a corporation, J. C. Studer, W. H. Hopkins, Harlan Hopkins, R. H. Stone, B. F. Tepe, W. D. Fisher, J. S. Hood, G. W. Arrington, C. M. Frogge, H. E. Hoover, D. B. Hoover, W. B. Johnson, and Geo. Gerlach. It is alleged that the Canadian Country Club was incorporated under the laws of the state of Texas, and W. H. Hopkins was the president, John H. Jones, S. L. McDonald, W. B. Johnson, J. S. Hood, J. A. Chambers, and W. H. Hopkins were its directors. It is alleged that John H. Jones died about two years previous to the filing of the suit, and that S. L. McDonald and J. A. Chambers transferred all their interest in the club to the plaintiff J. F. Johnson. The club was incorporated on the 11th day of June, 1909, with a capital stock of $7,400, divided into 37 shares of $200 each, which were fully paid up and nonassessable; that the assets of the club then and at the time of the suit consisted of a half section of land in Hemphill county, purchased from George A. Simpson and wife, June 26, 1909; that part of the consideration for the purchase of the land

was a note, payable to George A. Simpson, for $2,500, dated June 26, 1909, and due June 26, 1910, and secured by a vendor's lien on the land in question, and that on the 4th day of February, 1913, was transferred by writing which had been duly recorded in Hemphill county, Tex., to J. C. Studer, W. H. Hopkins, Harlan Hopkins, R. H. Stone, B. F. Tepe, W. D. Fisher, J. S. Hood, G. W. Arrington, C. M. Frogge, H. E. Hoover, D. B. Hoover, W. B. Johnson, and George Gerlach; that although its rents were amply sufficient to pay the franchise tax due the state of Texas, the directors, managers and officers of said corporation wholly failed and refused to pay the tax, so that on the 2d day of July, 1913, said club forfeited its said corporate existence, and in law said act created a dissolution of said corporation; that the vendor's lien on the land is unreleased, and that there are no funds, or at least insufficient funds, belonging to the club to pay off the note and interest; that although the plaintiffs are named alone as plaintiffs, they have permission and are suing for the benefit of all the stockholders of the club, except the defendants, naming J. A. Chambers, A. V. McQuiddy, W. A. Johnson, Sam Isaacs, and the estate of John H. Jones, deceased, Geo. F. Caylor, and others whose names, it is alleged, are unnecessary to mention in the petition. They allege that plaintiffs are all stockholders for whom they sue and were and are still the owners of an interest in the land and improvements thereon by reason of the fact that they subscribed for, paid, and still hold an interest and shares of stock in the corporation; that upon the dissolution and forfeiture of the corporation, it became the duty of the president and directors before named to settle the affairs of the corporation and divide the money and property among the stockholders after paying the debts as provided in article 682 (1206, R. C. S.). It is alleged that the club, having failed to pay its franchise tax and failed in its ability to pay off the note above mentioned, is therefore insolvent, and that the property and improvements are in such condition that the stockholders of the corporation cannot use, maintain, and enjoy the property and improvements as was originally contemplated when said corporation was organized. They allege their willingness at all times to do equity, and that they have communicated to the holders of the vendor's lien notes, as well as all members of the corporation, such desire; that they at all times were willing, and are now willing, to surrender their interest and stock upon the payment to them of the amount they placed in the corporation, without interest, and are further willing to tender into court the principal and interest due on the note whenever the same is transferred to them, and they further ask, in the event such amount is accepted by the court, that an order be entered foreclosing the vendor's

lien as it existed on June 26, 1909, and still exists, and that the property be sold and the proceeds be applied to the payment of the note, and the overplus arising therefrom be divided among the different stockholders as their interest may appear. They allege that the lands and improvements belonging to the corporation are of value in excess of the amount due upon said note, and that when it is sold that there will be a considerable sum of money in excess of the amount due upon the note, which ought to be distributed among the stockholders as their interests appear; that there is no means by which they can secure the value of their equity in said premises unless the court orders the property sold. It is alleged that the last meeting of the corporation, by a unanimous vote of the members of the corporation, ordered the property to be sold to satisfy the indebtedness, setting out the minutes of the meeting, which provides that the bank be requested to institute a suit to foreclose, and that the property be sold under the order of the court. It is further alleged that the owners and holders of the note have entered into possession of the premises and are attempting to hold the same on account of their ownership of said note, and that they have refused to carry out the order of the corporation and cause the property to be sold and the proceeds applied to the payment of their debt and the overplus divided among the stockholders, and, that they have likewise refused to foreclose their vendor's lien and cause the property to be sold in order that the value of the equity which the plaintiffs and those whom they represent could be secured for them so that a necessity for the action upon the part of the court exists to cause a sale of the premises in order that the equity of redemption in said property can be paid to those whom the evidence in this case will show are entitled to it. It is alleged that the club has failed to bring any character of suit, and is now in such condition that it cannot maintain such suit, and that the present directors, with full knowledge of such conditions, have failed to discharge their duty as before alleged. It is further alleged, inasmuch as the property is now owned by various subscribers to stock in the corporation, which is delinquent, and there is no authorized manager of same, they ask that a receiver be appointed to take charge of the property during the pendency of the suit, and perform such acts in such case as the court may direct. They further ask that if for any or all reasons alleged the court should not decree the property before described to be sold, then they ask that it be partitioned among the different subscribers to the stock of the club; that commissioners be appointed as the law directs. The general prayer is that the lien be foreclosed and the property sold; that a receiver be appointed to take charge of the property under

the direction of the court during the pendency of the suit, and pray that such order of sale issue for said land and the improvements, for the reason that the said directors and president required to sell the property and divide the proceeds among the stockholders after paying the debts have failed to do so, and pray, in the alternative, if it is not sold under the order of the court, then for partition, etc.

Appellants answered by general and special exceptions, some 15 in number, by general and special answers, which at this time will not be set out. The case was tried before the court without a jury, and there are no findings of fact in the record made and filed by the trial court.

The court, by his judgment, overruled the general and special exceptions of the appellants. The court rendered judgment, finding as a matter of fact that there is an equity of redemption over and above the amount of the vendor's lien note described in the petition, together with the interest thereon, and that a receiver ought to be appointed to sell said property to pay said indebtedness and distribute the proceeds. He thereupon, by his judgment, appointed J. L. Jennings as receiver of the land, directing him to sell the land at public or private sale to the highest bidder for cash, to pay the note with interest to the parties named in plaintiff's petition as owning the note, to pay the costs of the officers of the court incurred in prosecuting and in defense, including the cost of receivership and sale, and the surplus to be returned by the receiver into court, to be distributed by order of the court, as the court shall direct, among the stockholders of the Canadian Country Club, as shall be deemed just and equitable by the court; the order requiring a bond to be executed by the receiver, etc. From this judgment the 13 appellees, together with the club, appeal to this court.

The several exceptions which were presented and overruled by the trial court, whose action thereon is presented in this court by several assignments of error, present the general question of the right of the appellees to maintain and prosecute the action for receiver. We do not deem it necessary to take up each assignment and consider it separately, but shall address ourselves to the right to bring and maintain the suit by appellees.

[1] A well-recognized exception to the rule which requires suit to be instituted by the corporation, and that the stockholder shall first request the managing officers of the corporation to sue and a refusal on their part, before such stockholder can sue, is where the facts alleged show that it would be useless to request such managers to sue, or if the facts alleged show facts tantamount to a refusal to sue. It has been recognized as a right which stockholders may exercise under such circumstances in this state and in other jurisdictions. Joy v. Ft. Worth Compress Co., 24 Tex. Civ. App. 94, 58 S. W. 173; Cates v. Sparkman, 73 Tex. 619, 11 S. W. 846, 15 Am. St. Rep. 806; Kelley v. Collier, 11 Tex. Civ. App. 353, 32 S. W. 428; Becker v. Gulf, etc., 80 Tex. 475, 15 S. W. 1094; Mussina v. Goldthwaite, 34 Tex. 125, 7 Am. Rep. 281.

[2] It will be observed by the pleadings in this case that the property is claimed by the president and two others of the living directors of the corporation, which constitute a majority of the managing officers, together with 10 others of the stockholders. It is also alleged there was a lien on the property which these parties had transferred to them; that the value of the property greatly exceeds the debt; that the president, directors, and stockholders, 13 in all, had gone into possession of the land, claiming title to the land adverse to the corporation and the other stockholders. It certainly would be an unreasonable requirement of the appellee stockholders to compel them to request the directors to bring the suit in the name of the corporation against themselves for property which they hold adverse to the club. Their assertion of ownership is tantamount to a refusal. It is a clear denial of rights in the corporation and stockholders other than those holding with them. True there is no specific allegation of fraud, but what is equal thereto, we think, is alleged when it is shown that appellants were trustees, and as such set up in themselves title against their beneficiaries. This matter will be noticed further in a discussion of the case upon its merits.

[3] Again, it is alleged that the club forfeited its corporate existence July 2, 1913, and in law by said act created a dissolution by its failure to pay its franchise tax. It may be the allegation in the petition would not be sufficient of itself to show a dissolution (Harvey v. Provident Insurance Co., 156 S. W. 1127), but both parties to the action practically admit in their pleadings that it has no corporate existence. The appellants, in their answer, "admit that said country club failed to pay its franchise tax and thereby lost its corporate identity." The effect of a corporation forfeiting its right to do business on account of its failure to pay the franchise tax under article 7379, Vernon's Sayles' Civil Statutes, is discussed in the case of Favorite Oil Co. v. Chaison, etc., 162 S. W. 424, and carefully considered. We could add nothing to the clear and what appears to us to be a sound conclusion in that case. Judge Reese therein, discusses the general rule, as well as the exception, and in the course of the opinion he said:

"The right to institute this suit was denied the corporation by the express terms of the statute as a result of the action of the secretary of state. It was therefore forbidden to do any business as a corporation, and deprived of

the power to bring or defend any suit of any kind, except that it might defend an action brought to forfeit its charter."

[4] Again he said:

"We think that in such case, not on account of refusal, but on account of the inability of the corporation to sue under the rule stated, a court of equity should entertain a suit by stockholders when necessary to prevent a failure of justice."

It has been expressly held by the Court of Civil Appeals for the Fifth District, in Ripy v. Redwater, etc., 48 Tex. Civ. App. 311, 106 S. W. 478, that the forfeiture of the corporate rights by failing to pay the franchise tax authorizes a creditor to apply for and have the corporation placed in the hands of a receiver. Article 2128, R. C. S., authorizes the appointment of a receiver—

"in cases where a corporation has been dissolved or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights; in all other cases where receivers have heretofore been appointed by the usages of the court of equity."

Under the holding of the courts the corporation was not dissolved under article 1205, subd. 4—that is, its charter was not forfeited—but it is alleged by the petition that there was a forfeiture of its corporate rights, and that it is in such condition that it cannot maintain a suit.

[5] In a sense it is an entity without the right to sue. If not in the meaning of the above article a dissolved corporation, so that it should be administered under article 1206, it yet is shown to be so situated that a court of equity should take charge of it, pay its debts, and distribute its assets to those entitled thereto. While upon a dissolution of a corporation the property is owned in common by the stockholders, we think, under the showing in this case, that it was not necessary for all the stockholders to be made parties. The corporation itself is a party defendant, as well as its managing officers. If upon sale of the property and the payment of the debts there is any residue, the stockholders would have the right to intervene and ask for their share, upon proof and ascertainment of their interest. This suit is by the appellees for themselves and for all stockholders for their interest in the land against the corporation itself and those wrongfully in possession of the land, asking the court to compel the corporation to do what had been ordered to be done at a meeting of the stockholders; that is, foreclose the lien and give to each his share. It is contended this would amount to winding up the corporation, and that in order to maintain such a suit it should be instituted under and is governed by chapter 9, tit. 25, R. C. S. This is not a suit on insolvency alone, but is one also on the ground that the corporation has forfeited its corporate rights. It is contended under article 1203 that it is not alleged that 25 per cent. of the stockholders instituted the suit, and that no leave to file was obtained from the judge of the court in which the suit was instituted. The names of the stockholders who it is alleged appellees represent are set out in the original petition, and in the supplemental petition it is alleged that they own, control, and sue for the benefit of more than 25 per cent. of the amount of the capital stock, while from the petition it does not appear that the judge of the court in which the proceedings were instituted permitted the suit to be brought. With this exception the suit appears to have been properly brought under the statute mentioned. Whether it is properly brought under this statute or not, we understand from article 1204 that the remedy mentioned in chapter 9 is not exclusive but cumulative, and if the right to bring the suit appears from other statutes or under the rules of equity, the suit should not be dismissed. We have concluded the court properly overruled the exception urged by appellants, and all assignments with reference thereto will be overruled.

[6] We do not believe the petition shows that appellants had the legal title to the land, or were so in possession as lienholders, which would require the corporation or the stockholders thereof to tender the payment of the note and to discharge the lien before suit could be brought.

The appellants present several assignments to the effect that the judgment of the court is not supported by the evidence. It appears to be admitted by the parties in their pleadings that the Canadian Country Club was incorporated June 11, 1909, under the laws of the state of Texas, with a capital stock of $7,400, divided into 37 shares of $200 each, which were paid up and nonassessable. The company purchased a half section of land located in Hemphill county, with the improvements thereon, from George A. Simpson and wife. It is agreed that the Canadian Country Club forfeited its right to do business in the state, on account of its failure to pay its franchise tax to the secretary of state by July 2, 1913. On the 26th day of June, A. D. 1909, George A. Simpson and wife conveyed to the club the land in question for the recited consideration of $2,500 cash and $2,500 evidenced by a vendor's lien note on the land. On the 4th day of February, 1913, George A. Simpson transferred the vendor's lien note without recourse on him, by an instrument in writing to J. C. Studer, W. H. Hopkins, Harlan Hopkins, R. H. Stone, B. F. Tepe, W. D. Fisher, J. S. Hood, G. W. Arrington, C. M. Frogge, H. E. Hoover, D. B. Hoover, W. B. Johnson, and Geo. Gerlach, reciting:

"This transfer carries with it the lien upon said land and all right thereunder and passes to the transferees all my right, title and interest in said land as well as the said note."

On January 5, 1912, there was a special called meeting of the stockholders to provide ways and means to liquidate a certain promissory note due the First National Bank of

Canadian, secured by indorsement of several members of the club; the minutes reciting the indorsers were secured by several indorsers of the club. It is also recited that there was no visible way to take care of the note other than to let the bank foreclose on the property, taking the regular course through the courts. They appointed a soliciting committee to solicit among all the club members to raise money to buy the property when sold under order of the court, each subscriber to obligate himself to pay $200 and to reorganize with capital stock fully paid up. It appears from the record that no such suit was brought by the bank or the money obtained from the stockholders. When the vendor's lien note came due the club had no money, and negotiated a loan through some banks, giving their personal note therefor. The First National Bank finally carried the loan. The note given by the individual members of the club was executed to that bank. It appears that the bank would not take a transfer of the vendor's lien note, but took certain club members as security on the indebtedness for the money advanced. The members who so obtained the money were H. E. Hoover, John H. Jones, W. H. Hawkins, W. B. Jones, and J. S. Hood, and possibly one or two others. The note was renewed several times. It appears that the bank never owned the vendor's lien note in question, but it was pinned to the notes given to the bank by the members of the club to obtain the money, and it appears that the bank did not own the note at the time of the meeting above mentioned. Subsequent to the meeting on January 5th, there was another meeting called for the stockholders. It was understood at that meeting that they would get whatever members of the club that desired to come in with $200 apiece, or such amount as it would take to pay off the note, and to pay the note, and the ones so taking up and paying off the note would hold as their property the vendor's lien note and the land. It was also understood that any who did not feel able to put in his share to take up the note could come in and pay when he was able to do so. There is testimony to the effect that all the stockholders were notified of this last meeting, and that it was a large meeting, and it appears from this testimony that all who were present at this last meeting agreed to the proposition.

The appellants took possession of the land, and procured a transfer of the note by virtue of the agreement reached at the last meeting. There were no minutes kept of this meeting, or any record made of it; all the title or color of title appellants had was the transfer of the note and the agreement at the meeting. Appellants held the property adversely to all the other stockholders. There is some confusion in the evidence as to who of the stockholders were present at the last meeting. The trial court was justified in finding that the appellees instituting this suit were not present and did not agree that the parties paying off the note should have the land. The evidence is sufficient to show that all the stockholders were invited to come in and pay their pro rata share of the indebtedness. The appellees and some other shareholders refused. It was claimed by appellants that those who did not share in paying the indebtedness had no right or interest in the property. There is testimony that the privileges of the club grounds were not denied the stockholders suing. The evidence is sufficient to have warranted the court in finding that the privileges extended were only extended as a courtesy, and not as a right. There are facts which warrant the finding that the appellees did not ratify the action of the last meeting testified about, or ratify the act of appellants in taking possession of the property adverse to the club and other stockholders, and they demanded that the property be sold under the order of the court, and the debt paid and the remainder of the proceeds be prorated among the shareholders. There is evidence that the value of the property is greater than the indebtedness, and that there would be a surplus after paying the debt. It was agreed in the trial court that the note given by the club to Simpson for the land is secured by a lien, and is due and unpaid by the club, and that there were no funds available on the part of the club, the original maker, to pay it. It was also agreed that the note and interest described in the pleadings was paid by defendants, and due transfer of the same and lien securing same made to the defendants, and they thereby subrogated to all the rights of the original payee, Geo. A. Simpson, both as to the note and the lien. We presume by defendants is meant the parties named in the transfer as heretofore set out, and not the defendant Canadian Country Club. It was made a party defendant and answered as such. The directors of the club were W. H. Hopkins, John H. Jones, S. L. McDonald, W. B. Johnson, J. S. Hood, and J. A. Chambers, and W. H. Hopkins was the president and J. A. Chambers, secretary and treasurer. The appellees testified they represented $1,975 of the stock. Appellee J. F. Johnson owned the stock of J. A. Chambers and S. L. McDonald; John H. Jones was dead at the time the suit was brought. Johnson testified that the wife of Jones agreed to pay her part of the costs in prosecuting the suit. W. H. Hopkins, J. S. Hood, and W. B. Johnson, three of the directors, were named as transferees of the note in the instrument transferring the same, and are defendants in the case. The facts are sufficient to warrant the finding that the three directors participated in the meeting after January 5, 1913, in which it was agreed that those holding the note should take the property, and that the vote for the proposition at that meeting was unanimous. It was also agreed at the trial that the by-laws provided that no one

could acquire more than two shares of stock. The minutes of the club dated September 23, 1910, were introduced. The object of the meeting stated therein was to provide funds to pay off the remaining indebtedness to Simpson, which then practically amounted to $3,000, and stated that it was necessary for individual members to borrow upon their credit, and that certain members were authorized to borrow $3,000 on their individual note, to bear interest at 10 per cent. per annum, and turn the same over to the club— "and they are hereby given a lien upon all the property of the club, real, personal and mixed, as security to them therefor and a debit in the sum of $3,000.00 is hereby acknowledged to be due them and payable when their note for said money is due and same secured as aforesaid."

The object of the corporation, as we gather it, was to furnish hunting, fishing, and recreation grounds for the members of the club; the charter is not introduced in evidence.

The appellants, in their answer, all joining in it except the club, denied that the appellees had the right to sue for other stockholders, and naming two alleged in the petition as not being stockholders. They deny that appellees have any interest in the property, and allege that appellants were in possession as the owners and holders under the superior title retained in the vendor's lien, which had not been paid, or offered to be paid; that they took possession with the knowledge and consent of the club and all its stockholders, and that appellees knowingly permitted the appellants to acquire the note and take a transfer of same, together with the lien securing the debt, and to enter into possession of the property; denying that the bank had a lien on the land and that on January 5, 1912, it had no lien to foreclose; that by that meeting it was understood the property was to be sold in the event enough money was raised to buy the property when sold; afterwards there was another meeting, at which all members were notified to be present at the time appointed. It was alleged it was held with practically all the stockholders present; that it was agreed that, inasmuch as the money could not be raised to pay off the note to reorganize the company, the defendants, as the owners and holders of the note and lien, should at once go into possession of the land under their superior title and oust the club therefrom, giving the stockholders the right to come in and pay their proportional part of the debt, and to share equally with the defendants in the title, use, and enjoyment of the premises. It was alleged that this privilege had been accorded to the appellees, and that there was no record of the meeting above mentioned made, through inadvertence or mistake. They allege their willingness to surrender the property to the club if it would pay the indebtedness, and that they have gone into possession of the property with full knowledge and consent of the stockholders, and that appellees were estopped; that they

had made valuable improvements. They set up they were owners of the note, and prayed in the alternative, if a foreclosure was ordered, for attorney's fees. The Canadian Country Club filed a separate answer, adopting the allegations of the other defendants above mentioned, asserting that the allegations therein were true. Both pleadings were signed by the same attorney.

[7] Several assignments assailing the judgment are substantially the same as the assignment based on the ruling on exceptions to the petition, and what we have said with reference to those assignments will dispose of several under this head. It appears to be the main contention that the 13 named appellants who took a transfer of the note also took the legal title to the land from the original vendor of the land to the club, he having reserved a vendor's lien, thereby retaining the legal title, and had the right to convey that title, and that, a majority of the stockholders having assented to the appellants' taking charge of the property, such act fully vested them with both the legal and equitable title. We have reached the conclusion that the meeting held after January 5, 1912, of which no minutes were kept, did not have the effect of conveying the land to the 13 named appellants. As we understand the holdings of the Supreme Court (Baldwin v. Johnson, 95 Tex. 85, 65 S. W. 171), the action of that meeting would not vest the title in the appellants named. Judge Brown, speaking for the court, said:

"Although the appointment of the commissioners was the voluntary act of the stockholders, it was not evidenced by such instrument as is required by our statute in the conveyance of land and passed to the commissioners no title to land in this state. Neither could the corporation maintain the action for being dissolved; it no longer existed, and of course could not assert a right in the property. Ass'n v. Goode, 71 Tex. 90, 8 S. W. 639."

Appellants cite us to the cases of Aransas, etc., v. Manning, 94 Tex. 558, 63 S. W. 627; Ft. Worth, etc., v. Hitson, 80 Tex. 216, 14 S. W. 843, 16 S. W. 551; Canadian, etc., v. Seiber, 159 S. W. 898. In each of these cases there was a written instrument purporting to have been executed by the corporation through its proper officers. The question appears to have been in those cases whether the instruments were executed by order of the governing body for the corporation. It was held that, where all the stockholders were present and directed the execution of the instrument, such act on their part would bind the corporation. In the case of Aransas, etc., v. Manning, it is said:

"The directors must ordinarily make disposition of the corporate property because its creditors have rights which it is their duty to protect. A majority of the stockholders—even all save one—cannot authorize a sale of the corporate assets, for the reason that every stockholder has the right to require the action of the legally constituted agency, the board of directors, in the management of its business." Cook on Corporations, vol. 2, § 649.

It is not contended that all the stockholders were present and participated in the agreement alleged. This being true, under the authorities as we understand them, the action of the stockholders at the named meeting did not pass the title to the land of the corporation.

[8] In addition to this, the parties who were purporting to act for the corporation were conveying the assets of the club to themselves. This, as a rule, cannot be done. Cook on Corporations, vol. 2, § 649. It is established that directors occupy towards the company and its shareholders a fiduciary relation, which brings them within the operation of equitable principle, and that a purchase from it by one of them may be avoided at the corporation's option, whether the transaction be fair or not and although it was represented by other directors who would be competent to act for it in the same kind of transaction with one not connected with the company. "When a personal interest of one of them [directors] springs up adverse to that of the corporation, it disqualifies him to act concerning it as one of the representatives or agents." Tenison v. Patton, 95 Tex. 284, 67 S. W. 92. As above stated, the directors called the meeting and participated therein. It is testified that the action of the stockholders present was unanimous. When a director purchases the property of his corporation and refuses to account for the same or its value, he is chargeable with the property or its value, with the profits or interest accruing thereon as a trust fund for the use and benefit of the corporation, its creditors and stockholders. Tobin v. Frazer, 81 Tex. 407, 17 S. W. 25. It is contended that the original vendor transferred the legal title of the land to the appellants. It will be observed from the facts that the transfer was not made until February, 1913, after appellants were claiming the property as their own. As seen from what has been said, we do not think the act of the stockholders at the meeting divested the corporation of the title to the land. They were still in possession of the land for the beneficiaries. We do not believe they could, at that time, go out and purchase the title and hold it adverse to their principal. The order of the stockholders, January 5, 1912, was that the lien be foreclosed, and then the minutes also show that on September 23, 1910, the makers of the note to the bank had borrowed money to pay off the Simpson note, and, having done so, the corporation gave them a lien on the property of the company to secure that sum. It would appear from this that the vendor's lien note was paid off, and not until long afterwards was there any transfer of the note to appellants by Simpson. There is an agreement, however, that Simpson duly transferred the note and lien to appellants, and that they were subrogated to the rights of Simpson thereto. It should be observed,

however, that it was not agreed that Simpson transferred the legal title to appellants, and we think the agreement only gave appellants the right of subrogation to the lien, and will give them only the rights of a lienholder. It is well settled that the transfer of the vendor's lien note does not transfer the legal title to the land, but only the right of foreclosure, while the original vendor holds the legal title in trust for the transferree of the note. If this agreement represented the facts, the appellants had only a right to foreclose as against corporate property, and under the facts of this case they were not parties in such possession of the property as would require the corporation or a stockholder who has sued for the land to tender the money due thereon before instituting the suit and in order to maintain the suit. The trial court having found on sufficient evidence that there was an equity in the land after the debt is paid, the directors cannot, as against their beneficiaries, hold the land without accounting for its value. The remedy of rescission is a harsh one, and where there are facts from which it can be inferred that such rights have been waived, it should be done. Tom v. Wollhoefer, 61 Tex. 277. The vendor in this case is shown to have received payment of the note long before he transferred it. Certain stockholders made their note to the bank, and thereby obtained the money to pay off the note. The note was not transferred or indorsed to the bank or to the stockholders. After appellants had taken possession of the land they procured a transfer of the land and the lien, but upon the trial agreed that they had the transfer of the note and lien; but it is not agreed that the land was transferred. The minutes of the corporation show the parties borrowing money to pay the note were given only a lien on the company's property to secure the money they advanced to pay the note. We believe the trial court properly held that appellants did not have the title, but only a lien on the land. It may well be doubted whether, under the rules of equity, they could take a transfer of the land to themselves while acting in a fiduciary capacity and hold it adverse to the corporation. They should at least account for the value over the indebtedness and be held as trustees for such excess for the benefit of the corporation or of the stockholders. O'Neal v. Bush (Sup.) 173 S. W. 869.

[9, 10] We believe the court properly sustained the exceptions to appellants' answer wherein they ask in the alternative that they recover 10 per cent. as attorney's fees provided for in the Simpson note. They did not bring suit to foreclose, but compelled appellees to do so, and contested the right of foreclosure. We do not think their allegations entitle them to attorney's fees. Neither do we think they were entitled to the items set up in their answer and denominated as im-

provements in good faith. These items appear to be for labor on the property, but do not show to be improvements of a permanent nature or value to the land; and we also think the allegations do not show such equity as will authorize them to recover for the work done on the land. It appears to us that there was no actual wrong intended by appellants, the directors or stockholders, by their acts, but being in a fiduciary relation, they will not be permitted to profit thereby, however honest their purpose, especially so as the appellees did not assent to the transaction and were not present at the meeting in which the agreement was made to take charge of the property. We believe the trial court properly disposed of the case. The appellants will recover their money and interest; and, as there has been no improvements placed on the property of a permanent nature, we think no injury will be done by the judgment of the court.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

The appellants, in their motion for rehearing, accuse this court of inconsistency in the original opinion, in that we held in order to maintain the suit that the corporation was dissolved, and that it was not necessary to make parties all the stockholders because the corporation was a party.

[11] In the first place, we did not hold the corporation dissolved. It was alleged in the petition it was dissolved, and that it had lost its corporate identity or forfeited its charter because it had not paid its franchise tax. We held the allegation not sufficient for that purpose, but that it was sufficient to deprive it of the right to do business or to defend or prosecute a suit as such. The failure to pay the franchise tax has repeatedly been held not an act of dissolution. Fox v. Robbins, 70 S. W. 599; Rippstein v. Railway Co., 85 S. W. 314; Maloney Mercantile Co. v. Savings Bank, etc., 56 Tex. Civ. App. 397, 121 S. W. 889. Having lost its right to do business or to sue, a stockholder can maintain an action to protect its property or prevent its officers, or any one else, from appropriating its assets. This is the holding of Judge Reese, in a well-considered opinion, in the case of Favorite Oil Co. v. Chaison, 162 S. W. 423. If appellants' theory is correct, the managing officers of a corporation can refuse to pay the franchise tax, appropriate the assets of the concern to their own use, and render the corporation itself powerless to sue for the recovery; and because it is yet an entity in law without corporate rights in the courts, prevent the recovery thereof, or prevent a stockholder, not a party to the appropriation of the corporate property, from suing. Such, as we understand, is not the law, and clearly would not be right.

[12] Article 2128, R. C. S., authorizes the appointment of a receiver in this very condition of a corporation; that is, when a corporation "has forfeited its corporate rights." The corporation was not dissolved; hence the property was not held in common by the stockholders, but was then in the corporation, whose entity was not destroyed, but whose rights to sue and act were forfeited. Being in that condition, clearly, the statutes recognize the right of any stockholder for the corporation to sue for the property and to place the property in court, for the reason under the law there was no managing officer or corporate body with a right to do so as such. In that sense, the corporation is a party. The court, having taken charge, instead of the directors, can pay the debts and distribute the assets to those entitled thereto. The court having rightfully acquired jurisdiction to protect the property at the suit of a stockholder, and having found it to be insolvent, and in such condition as that it cannot perform its charter purposes, we see no reason why a court of equity, having thus rightfully acquired jurisdiction, may not wind up its affairs and adjust the rights of the various stockholders.

[13] It is also contended that we were wrong in holding that the evidence was sufficient to show that Johnson and Brainard did not ratify the action of the stockholders at the last meeting, of which no minutes were kept, because the pleading and the evidence show that appellants went into possession of the property with full knowledge on the part of the appellees and used it for over two years before the suit was filed. In the first place, the record does not show appellants were in possession, claiming the land, as theirs, over two years before bringing the suit. Some of the witnesses in testifying at the trial said at that time the appellants had been in possession about two years. The judgment in this case shows to have been rendered September 4, 1914; the amended petition shows that the original petition was filed April 14, 1914; the facts further show, as set out in this case, that the last meeting of which any record was kept was on January 5, 1912. The meeting of which no record was kept, and by virtue of which appellants claim the land, was held after that meeting, just when the record is silent; but the facts clearly indicate it was some time after January 5, 1912. At the January, 1912, meeting, a committee was appointed to call upon the stockholders to obtain money to buy in the property at a foreclosure sale, or, as some seem to understand, to pay the debt. On February 4, 1913, appellants procured a transfer of the note from Simpson and wife. It is not at all certain from this record when the appellants took possession of this land as their own, or announced that their possession was adverse to that of the corporation.

In addition to the above the facts are practically uncontroverted that appellees at all times refused to acknowledge appellants' right to take the land, and demand that if they did so they must be paid the amount they put into the corporation. At this meeting, upon which appellants rely, there was no contract to sell. Real estate of a corporation is not disposed of in that way in this state, and there was nothing to ratify, even if it had been in the power of appellants to ratify the sale, for the corporation. It is said by appellants that, in order to rescind, it must be done promptly, and that two years, according to our holding, is promptness. There was no contract to rescind. Part of the stockholders could not convey, or contract to convey, the real estate of the corporation. The directors, president, vice president, or secretary, under the corporate seal, did not purport to do so. Appellees were not at the stockholders' meeting; hence made no agreement, and therefore made no contract to rescind. The appellants were not induced to take possession of the land by appellees' solicitation or any act of theirs. Appellants took possession of their own volition. There is not an element of estoppel in it. It is a strange and new doctrine, because one sees another in wrongful possession of his land, or land to which he has an interest, and because he does not bring suit in less than two years, that he is estopped from thereafter claiming title or suing to recover the land. When appellants assumed that appellees stood quietly by and made no objection to the claim made by appellants, they assumed that which is in the very teeth of appellees' testimony, and much of that which came from appellants.

We sought to acquit appellants of any intentional fraud, but counsel who prepared the motion for rehearing charges that we held as a matter of fact there was sufficient evidence to show fraud, while there was none alleged or proven. We overlooked none of the assignments, as supposed by appellants, but answered all, or gave, as we thought, a reason why they should not prevail. We held the directors, who were also the claimed grantees, stood in a fiduciary relationship to the corporation and stockholders and could not, under the law, buy the land from themselves. The evidence shows that the vice president and others were at the meeting at which it is claimed they were given the right to the property. It is testified that it was the unanimous consent of all present. Appellants' sworn pleading is that practically all the stockholders were present at that meeting, and that it was unanimously agreed for appellants to take the property. There is not a fact or a circumstance showing that the appellants did not participate in the agreement to transfer the property to themselves. These appellees were not present is established be-

yond serious question. In addition to the authorities cited by us in the original opinion, we call attention to McCord v. Nabours,. 101 Tex. 494, 109 S. W. 913, 111 S. W. 144. The Supreme Court, speaking through Judge Brown, said:

"A more thorough knowledge of the facts of this case assures us of the necessity for and wisdom of the rule which the courts have established that the good faith and purpose of the assignee or trustee who, without the consent of the beneficiary, becomes the purchaser of property confided to his care constitutes no defense to an assertion by the beneficiary of voidability of the title thus acquired."

The above case was before the Supreme Court prior to the above decision, where the same rule was announced and discussed. 100 Tex. 456, 100 S. W. 1152.

We also refer to the able opinion in the McCord Case, supra, when before the Court of Civil Appeals, by Special Justice Cochran, 36 Tex. Civ. App. 504, 75 S. W. 827. Whether the directors were all present or not, those who were acted for them, and they are found claiming the property belonging to their beneficiaries. The directors, to pay a debt in part due them, have taken the entire corpus of the corporation. So holding it, all the decisions charge them with its value. Their possession is that of the beneficiaries. It belonged to the corporation, and upon settlement of the debts the stockholders, upon winding up, are entitled to their proportionate share of that value.

[14] The appellants also assert that we went outside the record to assume that Simpson was paid; that we are bound by the agreement of the counsel at the trial, etc. It is also urged that the agreement admitted that Simpson conveyed the title to the land to appellants. We do not so interpret the agreement. The agreement is as follows:

"It is agreed that the note and interest described in all the pleadings was paid by the defendants and due transfer of the same, and lien securing same, made to the defendants, and thereby became subrogated to all the rights of the original payee, Geo. A. Simpson, both as to the note and lien."

Interpreted in the light of the record, this was not an agreement that Simpson conveyed the land to appellants, as argued by them. It is an agreement that the interest of Simpson in the "note and lien" became appellants' by subrogation.

On February 4, 1913, when the transfer was made, what interest did Simpson have in the note and lien? He had, by warranty deed, conveyed the land. The note was due January 26, 1910. On that date there was $1,121 paid and credited on the note; and on September 27, $1,606.58 was paid and credited on the note, which discharged the entire note, principal and interest. Appellants proved positively the note did not belong to the bank. There is no other inference to be had than that it was paid to Simpson. It is clear it was not paid to appellants at that time, or to the makers of a

note to get the money to pay it. More than two years after its payment the appellants procured an assignment of Simpson's interest; what did they get? Simpson had no title to the land or lien on it. He had conveyed the one and the other was discharged.

Appellants introduced the minutes of the meeting of September 23, 1910, in which certain parties were authorized to give their notes to the bank to borrow the money and pay off the notes, and gave such parties a lien on all the corporate property to secure them in such payment. It is manifest Simpson's note and lien were discharged in 1910, more than 2½ years before his written transfer. If so, his transfer conveyed nothing. It is agreed that the parties paid the note and thereby became subrogated. It is true the construction of the sentence is such, without the aid of the facts in the record, it might be interpreted by the transfer that appellants obtained the lien thereby; if so, they got it by the transfer of the lien, and not by subrogation. If the note was paid, it discharged the lien. It might be, if the appellants paid the note, equity would subrogate them to the rights of the lienholder, but that did not convey the land. It was not agreed that it did, but was agreed that appellants were subrogated to the lien, not that the lien was transferred by Simpson's instrument at the date of the payment of the note. If the agreement is to be held as a transfer of the lien, then it is an ambiguous one and inconsistent, because it is also agreed the note was paid, not purchased, and that thereby subrogation resulted. If it was paid, there was nothing to transfer. Subrogation is an act of law, and not of contract. In order to keep a lien alive, the intention must exist at the time of payment. There is no such intention shown on the part of Simpson, the corporation, and the parties paying the note, when the note was paid; but the agreement between parties paying off the note in 1910 and the corporation for so obtaining the money was they should have a lien on all the club's property, real, personal, and mixed. We do not think the quoted agreement is subject to the construction that when the payment of the note was made, there was then a transfer of the lien; but counsel evidently intended to agree in the light of this record, by paying off the debt, they were subrogated by virtue of the law to the lien; at any rate, they did not agree the title passed to the land. The evidence shows there was no title in Simpson to pass on February 4, 1913. We think the trial court correctly held that appellants had a lien for the money advanced, and had no legal title to the land. It appears to us any other holding would be unjust in the light of this record.

The appellees, in the petition, offered to pay into court the money due appellants, and offered to do so upon the trial. The actual payment of the money into court was waived by the parties. We think the trial court properly disposed of this case, and upon a re-examination of the case and our opinion thereon, we see no reason for changing it.

The motion is overruled.

---

⊙〰For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes